## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.:

COLE SIGNORELLO, and
PORTER NEUBAUER,

    Plaintiffs,

v.

SERRE FULTON MURPHY,

    Defendant.

_____/

## COMPLAINT

    Plaintiffs, Cole Signorello and Porter Neubauer, by and through undersigned counsel, file this Complaint for relief against Defendant, Serre Fulton Murphy, and allege as follows:

## PARTIES

    1.    Plaintiff Cole Signorello ("Cole"), at all relevant times, has been and is an individual permanently residing in Miami, Florida.

    2.    Plaintiff Porter Neubauer ("Porter," together with Cole, "Plaintiffs"), at all relevant times, has been and is an individual permanently residing in Belvidere, Tennessee.

    3.    Plaintiffs are informed and believe, and thereon allege that at all relevant times Defendant Serre Fulton Murphy ("Serre" or "Defendant") is a U.S. citizen from the Portland, Oregon area, that also resided in Lisbon, Portugal.

## VENUE AND JURISDICTION

    4.    This Court has jurisdiction over this matter pursuant to 28 U.S.C.§ 1332 (a)(1), insofar as the matter in controversy exceeds the sum of Seventy Five Thousand Dollars

1

($75,000.00) exclusive of interest, attorney fees and costs, and there is complete diversity between Plaintiff and Defendants.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the events giving rise to the claims herein, including the publication of defamatory statements intended to be read in and cause harm in Miami, occurred in this District. Venue is proper in Miami-Dade County, Florida pursuant to Florida Statute § 47.011 in that the causes of action alleged herein, including the wrongful publication of defamatory statements, occurred in Miami-Dade County, Florida.

## FACTS

6. Cole is 21 years old and is entering his senior year at Washington and Lee University. He was studying abroad at the University of Oxford in England during the incident described herein. Cole has a history of academic excellence, is seeking an education at a prestigious American university, and was accepted in a foreign studies program at Oxford. When not in school, Cole's primary residence is in Miami, Florida.

7. Porter is 21 years old. He is entering his senior year studying sociology at Washington and Lee University. He is a young student, with a history of academic excellence, seeking an education at a prestigious American university. Like Cole, he was accepted into a foreign studies program at Oxford. When not in school, Porter's primary residence is in Belvidere, Tennessee.

8. From November 9 to November 11, 2023, Cole, Porter, and a group of other students from Oxford went on a holiday weekend break to Lisbon, Portugal.

9. In Lisbon, around 4:00 PM on November 10, Cole, Porter, and the other students met at a sandwich shop. When they arrived, Defendant Serre Fulton Murphy began talking to the group. Serre appeared to be older than the students, about 35 years old.

10. Serre indicated that he was an American national who was then residing in Lisbon, and that he was from Portland, Oregon. Serre also explained that his father committed suicide and that he had inherited money from family wealth.

11. As Serre talked with Cole, Porter, and the group of students, it became evident that they were all going to the same concert event the next evening.

12. The group spent about an hour at the sandwich shop, and then went to a rooftop bar. They stayed for approximately two hours, and Serre offered to show them around Lisbon. The group of students walked around the bar and Serre tagged along.

13. They then left the rooftop bar around 10:00 PM. The students went back to the Airbnb where they were staying in Lisbon, and Serre followed them, essentially inviting himself.

14. Later, around 11:00 PM on November 11, 2023, the group of students and Serre decided to go to a club that Serre recommended. The group of students and Serre left for the club, however, the students began to feel awkward that Serre was accompanying them everywhere.

15. On the walk to the club, Serre criticized some of the female students who had to stop to use a restroom and questioned why they were lagging behind. Cole and Porter thought this was strange, and that normal people would not question an individual's need to use a restroom.

16. Serre also started making misogynist comments on the walk. For example, when the students asked him to take a picture, he said he was using an angle that was spread wide like a woman's legs. He continued to make strange and inappropriate comments, including comments about the women in the group.

**Serre's Behavior Toward Cole and Porter Becomes Aggressive**

17. The group of students and Serre stayed at the club for about an hour to an hour and a half. Around 15 minutes before Cole and Porter left the club, a portion of the group of students left and went to an Irish pub.

18. Cole, Porter, Cole's girlfriend Chelsea Kuys ("Chelsea"), Harry Putt ("Harry"), and Eric Coestad ("Eric") then left the club. When they walked outside, Serre was waiting at the door. The group began to become nervous, since he appeared to be waiting for them. Cole and Porter believed that Serre was waiting outside the club to confront them.

19. Feeling uncomfortable, Cole attempted to excuse this smaller group, saying that they were all tired and wanted to go home and rest for the night. Cole tried to leave with no hard feelings, saying that they would see Serre tomorrow night.

20. Serre, however, appeared to grow upset and agitated. The group tried to calm him down, but, as they left for the Airbnb, he began to follow them.

21. At this point, Serre's mood completely shifted and he grew almost manic. He started to fabricate a story that Harry had stolen money from him. He claimed different amounts were "stolen" at different times, first claiming it was €55, and then €35. His story was never consistent and he never said how Harry stole this money.

22. Of course, Harry denied stealing any money from him. Instead, just to get rid of the agitated Serre, Harry said words to the effect of: "Look we didn't take any money from you, but I'll offer to pay you the money back."

23. Chelsea then suggested they leave Serre and go back to the Airbnb. Serre then started to insult her, saying vile things, such as "suck my cock," and "you are a whore and a slut." He mocked her South African accent. Chelsea then left the group.

4

24. Serre was walking around, circling the group, and yelling at them in public. He appeared to be menacing.

25. Harry then pulled out his wallet and said words to the effect of: "Look I'll go to an ATM and give you the money you claim you lost." At that point Serre grabbed Harry's wallet and started walking away. Harry, and perhaps others, then began video recording him. This video demonstrates Serre's action and confirms that he took Harry's wallet.

26. Serre took approximately $80 USD from the wallet, tore the bills up, and started yelling, "you think this money means anything to me?!"

27. He then said this was a level of disrespect that can get you killed, but that he would let the students live. Cole, Porter, and the other students were fearful for their lives.

28. Serre turned and walked away with the wallet. After Harry asked him for it back, Serre gestured, indicating that Harry would have to follow him to get it.

29. At around 2:30 AM, the group of students began walking quickly in the other direction away from Serre and went back to the club to talk to the bouncers. The group explained to them what had occurred and the bouncers directed them to the police outside the club.

30. The students went to the local police in the plaza and explained that Serre had followed them, made threats, and had taken Harry's wallet. A few police officers confronted Serre, who had followed the group back to the club, found the wallet on him with Harry's ID in it, and returned it to Harry.

31. The group of students also told the police that they were concerned about Serre's behavior and were afraid of him. The police advised Serre and the kids to walk away in separate directions and then left the students and Serre in the street.

5

32. The students began walking away from Serre as directed, but Serre followed them. He caught up with them and began yelling obscenities and threats.

33. Serre then suddenly assaulted Harry, ripped his shirt, and began pummeling him. Porter jumped on Serre and took him to the ground to try to facilitate an escape for Harry. At that point, because Cole felt that their lives were endangered, he also attempted to subdue Serre. Punches were thrown in this attempt to get away from Serre and protect each other.

34. Porter sustained a gash over his left eyelid and bruises. The students saved Harry's torn shirt and Porter's watch, which was broken off his wrist by Serre. At the end of the altercation, Serre tried to make himself a victim by yelling for help.

35. The boys once again tried to run away from him, but Serre continued to follow the group. Cole was scared of Serre, and split off running from the group. He reached out to Chelsea, and they met and took an Uber back to the Airbnb.

36. Porter was still with Harry and Eric and they eventually outran Serre. At one point, Porter got lost and found himself a couple of blocks away from the Airbnb and ran back. They locked the doors and went to sleep.

### **Serre Files a Police Report and His Social Media Messages and Posts Begin**

37. When Cole and Porter woke up, they saw that Serre and his associates had made a number of social media contacts with the group. Serre had posted a false account of how he had been attacked, violently assaulted, and money was stolen from him. Serre and his friends also sent messages and made posts that they would see the students at the concert the next night, and used an emoji of a blood drop and issued various threats in these posts. The threats from Serre's friends may have come from fake accounts that Serre used or controlled.

38. Because of Serre's messages and social media posts, the group avoided attending the concert that night out of fear. They went elsewhere for the day and arrived back at the Airbnb in the early evening in separate cars.

39. Cole, Eric, and Chelsea arrived first in one car and saw that the local police were there. The police asked if they were Americans, and Cole stated they were. The police asked if they were involved in an altercation and said that they were there because Serre had filed a police report.

40. The police report contains provably false factual allegations against Cole and Porter based on a perjured sworn statement by Serre.

41. Cole explained the facts to the police, as pled herein. Cole made it clear that he and others were in fear for their lives. The police said that Serre claimed he had been assaulted and money stolen, and the group denied this.

42. Cole asked if there were any problems, since they intended to leave the next day to go back to Oxford in England. The police said no there was no problem, and that they may go.

43. Porter and Harry arrived at the Airbnb about ten minutes later. When Porter arrived, he noticed that Serre was in the back of the police car. Serre rolled down the window and said to Porter, "I know where you live in Tennessee because I go there every year. I'll be seeing you." Porter's parents have a home in Tennessee and apparently Serre had done research to determine that. Porter felt very threatened at that point.

44. In the Airbnb the police questioned Porter and Harry separately from the rest of the group. They provided the same information as Cole, and the police commented that the two conversations corroborated each other. Porter asked if they would be taken in, to the police station

7

or delayed in any way, because he had school Monday. The police said no, but said there had been a police report made by Serre.

45. After the questioning, the group asked the police if they were safe staying at the Airbnb until they left the country. They explained they had received threats from Serre and his friends and were worried about their safety at the Airbnb. They told the police that when they had walked back to the Airbnb, Serre followed and threatened them. The police assured them that they were safe.

46. The police took no action against Cole, Porter, or the other students.

### Serre Contacts Cole and Porter's Universities and Spreads Defamatory Messages to People in Miami

47. After Cole, Porter, and the group of students left Portugal, Serre continued to send threatening messages to them, both from himself and his associates.

48. Beginning almost immediately upon their return to school, Serre published and released defamatory and harmful information about Cole and Porter to their school, intending to harm them at their college institutions and for their colleges to take adverse action against them. Serre also intended to harm their potential employment and reputations at school, to their employers and in Miami.

49. As of today Serre has launched dozens of emails, texts, tweets, social media comments, in many jurisdictions, including but not limited to Miami, Florida, in an attempt to create an image of criminal conduct by Cole and Porter, when in fact, Serre was the aggressor. Serre published the names of Cole and Porter, knowingly stating or implying they had committed crimes. Serre targeted third-party readers in Miami, including Cole's sister who lives in Miami, knowing that his defamatory statements would cause harm to Cole and Porter's reputations in Miami.

50. The publications sent by Serre, accusing Cole and Porter of crimes and various misdeeds, were released to universities, employers, and individuals and reside on the Internet.

51. Strategically, Serre also released a doctored picture of himself, claiming he was assaulted by Cole and Porter.

52. Serre knew that the allegations that Cole and Porter committed crimes set forth in his publications were false and would severely injure Cole and Porter's reputation.

53. Serre contacted Washington and Lee University, where Cole and Porter are students. Washington and Lee reached out to Cole and stated it had been contacted by Serre who made serious allegations against Cole. Washington and Lee stated it had received complaints and posts concerning an assault by Cole and Porter, on Serre. Cole explained the story briefly, trying to correct the misunderstanding, but Washington and Lee insisted on proceedings regarding the complaints.

54. Then, on Friday, November 17, 2023, Oxford contacted Cole and Porter and asked to speak with them urgently. Oxford asked Cole to appear at the college office, saying that it was essential to meet because an incident had been reported to the college.

55. Porter received a similar contact from the Oriel College, the Oxford college he attended.

56. Cole and Porter's universities have indicated that the information they received from Serre may result in disciplinary action. Hogan Lovells, attorneys for Cole and Porter, had to communicate with both Washington & Lee University and Oxford University to forestall this disciplinary action. (*See* Letters attached hereto as **Exs. A and B**).

57. Serre also reached out to people not involved in the incidents in Portugal. Serre contacted Evan Gross ("Evan"), another student in the group, on LinkedIn, and contacted Evan's

9

employer. Evan was not involved in the altercation at all. The threats Serre made about Evan Gross are demonstrably false, since Evan was not with Cole and Porter when the altercation occurred.

58. Serre also found Cole's sister's social media account and sent messages to her alleging that Cole beat him within an inch of his life and sent photos of him with black eyes. Cole's sister's permanent residence is in Miami, Florida and she was in Miami when she received these messages and images.

59. Serre sent e-mails to Cole and Porter's parents, stating that it was not good for them to leave matters as it is right now, implying that with a payment he would cease his unlawful conduct. Cole's parents were in Miami, Florida, where they are permanent residents, when they received these messages.

60. Serre has bombarded Cole and Porter's universities, relatives, employers, and more in an attempt to ruin Cole and Porter's reputations and interfere with their education. Serre's publications have caused serious embarrassment for Cole and Porter and pose a threat to their educational and prospective employment by falsely claiming Cole and Porter committed a crime.

61. Serre intended his defamatory statements alleging Cole and Porter committed crimes to reach and by read by people in Miami and intended the statements to cause harm to Cole and Porter's reputation in Miami and other jurisdictions.

62. None of the students were arrested or charged with any crime in Portugal, despite having two interactions with the police.

**Cole and Porter Continue to be Harmed by Serre's Defamatory Statements**

63. Cole and Porter continue to attend their universities and excel in studies, but are facing vicious attacks by Serre's publications that are intended to interfere with their education and prospective employment and relationships, including in Miami, Florida.

64. Cole and Porter's academic merits and promise as blossoming students would normally be undisturbed. Both students have the academic drive and persistence to network and to begin building their future success. But, like many other young students they are subject to social media and the internet reputational harm.

65. Cole and Porter are the subject of reputational harm as students targeted by Serre with false allegations that they were the purported cause an "assault" on Serre.

66. To date, Serre has allowed Cole and Porter's reputations to continue to be damaged. Serre has failed to take corrective action to report his misrepresentation of facts and clear Cole and Porter's names.

67. As a result of the misinformation published by Serre, universities, prospective employers, relatives, friends and others have a false narrative and impression of Cole and Porter.

68. Cole and Porter's universities have already suggested that Serre's publications could result in disciplinary action.

69. Cole and Porter's reputations have been harmed and they are now seeking redress from the Court in this suit against Serre.

**CAUSES OF ACTION**

**COUNT I: DEFAMATION (LIBEL PER SE) AGAINST DEFENDANT SERRE**

70. Plaintiffs incorporate herein each and every allegation contained in paragraphs 1 through 70, as if such allegations were set forth herein in their entirety.

11

71. Serre intentionally and/or negligently and recklessly made false statements about Cole and Porter by accusing them of a serious crime of assault.

72. Serre published these libelous statements through emails, tweets, texts and social media.

73. Serre intended his defamatory statement to reach and by read by people in Miami and intended to cause harm to Cole and Porter's reputation in Miami and other jurisdictions.

74. Serre's libelous statements were read by people in Miami.

75. Serre knew or should have known that his publications were false. His statements concerning Cole and Porter are false and made by Serre with either knowledge of their falsity, reckless disregard of their falsity, or negligence as to their falsity.

76. The false defamatory statements suggest, among other things, that Cole and Porter engaged in criminal conduct and therefore such statements are actionable as libel *per se.*

77. Serre published the libelous information, knowing it could harm Cole and Porter's reputations and scholastic endeavors, as well as their future employment opportunities.

78. Serre made the statements with actual express malice and with the intent of discrediting and harming Cole and Porter's personal, scholastic and business reputation, including but not limited to negatively impacting their reputation with prospective careers and business opportunities and partners in Miami. The libelous statements affected Cole and Porter's reputations in Miami.

79. As a direct result of the false defamatory statements, Cole and Porter continue to suffer damages, including but not limited to damages to their personal and business reputation in Miami and elsewhere.

80. As a result of Serre's libelous statements, Cole and Porter have and will lose academic opportunities and potential employment opportunities and have been severely damaged because of the publication of these false accusations.

81. Cole and Porter have also been the subject of cyber bullying as a result Serre's publications.

82. As a result, Cole and Porter thereby seek damages in an amount to be determined at trial. It is estimated that Cole and Porter could stand to lose a minimum of over Ten Million Dollars ($10,000,000.00) in their respective careers, now forever tarnished by the acts of Defendant.

83. Serre's publications were done with malice, entitling Cole and Porter to exemplary and punitive damages.

WHEREFORE, Plaintiffs Cole and Porter demand an award of a judgment against Defendant Serre, monetary damages, an order requiring Defendant Serre to cease and desist, and attorney fees and costs and interest, as well as any additional relief the Court deems just and equitable.

### COUNT II: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AGAINST DEFENDANT SERRE

84. Plaintiffs incorporate herein each and every allegation contained in paragraphs 1 through 84, as if such allegations were set forth herein in their entirety.

85. Serre's actions were beyond extreme and outrageous.

86. Serre knew or should have known that his publications would cause harm to Cole and Porter.

87. Serre intended for his publications to have a negative and misleading effect on Cole and Porter's reputation in Miami and emotional stability.

88. Serre deliberately and recklessly caused harm to Cole and Porter's reputations in Miami, by publishing false statements, intended to be read by people in Miami and intended to cause harm to Cole and Porter in Miami.

89. At the time of the publications, Cole and Porter were in prestigious college programs, which Serre contacted in an attempt to ruin their college careers.

90. Serre knew or should have known that the publications would also cause Cole and Porter to be targets of cyberbullying and public humiliation.

91. He also deliberately instilled, with threats of physical violence and intimidation, fear and trepidation in Cole and Porter about their safety and well-being.

92. Serre refused to rectify his actions despite requests to do so.

93. Due to Serre's publications and failure to mitigate the pain and damages he caused, Cole and Porter have suffered severe emotional distress including depression and anxiety.

94. As a proximate result of the above actions by Serre, Cole and Porter have suffered reputational harm, shame, mortification and emotional distress, educational harm, reputational harm, and potential harm to their future employment opportunities in Miami and other jurisdictions that will result in lost millions in income.

95. Serre's publications were done with malice, entitling Cole and Porter to exemplary and punitive damages.

WHEREFORE, Plaintiffs Cole and Porter demand an award of a judgment against Defendant Serre, monetary damages, an order requiring Defendant Serre to cease and desist, and attorney fees and costs and interest, as well as any additional relief the Court deems just and equitable.

**COUNT III: DECLARATORY JUDGMENT AGAINST DEFENDANT SERRE**

96. Plaintiffs incorporate herein each and every allegation contained in paragraphs 1 through 96, as if such allegations were set forth herein in their entirety.

97. This is an action against Serre for a declaratory judgment under the Florida Declaratory Judgment Act, § 86.011 *et seq.*, Florida Statutes.

98. There is a bona fide, actual, present practical need for the declaration because Serre has used false and fraudulent means to disseminate false information as to Cole and Porter, which Cole and Porter dispute. Because Serre's representations concerning the Cole and Porter were knowingly false, Cole and Porter seek a declaration that Serre's actions must cease and desist and any content he transmitted must be withdrawn and corrected.

99. Due to Serre's misrepresentations and material omissions in his communication with Cole and Porter, their parents, relatives, universities and employers in an attempt to induce one or all of those parties to make payments to Serre, Cole and Porter seek a declaration that it is entitled to equitable relief, and a declaration that Serre must cease and desist.

100. The declaration Cole and Porter seek, involves a present, ascertained, or ascertainable state of facts, or a present controversy as to a state of facts, due to Serre's transmission of false statements about Cole and Porter.

101. There exists an immediate, substantial, real, and justiciable controversy between Cole and Porter and Serre regarding the parties' rights and obligations as set forth herein.

102. Cole and Porter and Serre have antagonistic interests in the subject matter, and those interests are set forth herein and the relief sought is not merely the giving of legal advice or the answer to questions propounded from curiosity

103. Issuance of a declaratory judgment will provide Cole and Porter with redress relating to the disputes described above.

WHEREFORE, Plaintiffs Cole and Porter demand a declaration of their rights as against Defendant Serre as set forth above.

**COUNT IV: FRAUDULENT INDUCEMENT AGAINST DEFENDANT SERRE**

104. Plaintiffs incorporate herein each and every allegation contained in paragraphs 1 through 104, as if such allegations were set forth herein in their entirety.

105. Serre is attempting to fraudulently induce Cole and Porter and/or their parents to pay money to Serre to cease making false allegations against Cole and Porter to Cole and Porter and their relatives, friends, schools and employers.

106. Serre misrepresented to Cole and Porter, their relatives, friends, schools and employers repeatedly false statements about Cole and Porter.

107. These were material misrepresentations intended to induce Cole and Porter and/or their relatives into paying Serre to stop making such false allegations.

108. Serre knew that these representations were false when made, and intended that Cole, Porter, and others rely upon these misrepresentations and omissions to obtain money.

109. Cole, Porter, and others did rely on Serre's misrepresentations and omissions, and their reliance was justified.

110. Cole and Porter were injured because their relatives, schools and employers began inquiries as to the alleged misconduct of Cole and Porter and would not have done so had they known Serre's representations were false.

WHEREFORE, Plaintiffs Cole and Porter demand an award of a judgment against Defendant Serre, monetary damages, an order requiring Defendant Serre to cease and desist, and

16

attorney fees and costs and interest, as well as any additional relief the Court deems just and equitable.

## PRAYER FOR RELIEF

Due to the actions of Defendant Serre, Plaintiffs Cole and Porter have been placed in an unfair and unfortunate position and have a humiliating false narrative embedded in social media and the Internet. Their lives will never be the same, with millions lost in income and opportunities. On account of this, Plaintiffs pray for:

(a) Compensatory, economic, exemplary and punitive damages;

(b) An order requiring Defendant to cease and desist and withdraw his false statements, and prohibiting Defendant from publishing directly or indirectly any statements about either or both of the Plaintiffs;

(c) Judgment entered against Defendant and in favor of Plaintiffs;

(d) Pre and post judgment interest on the Judgment;

(e) Plaintiffs' reasonable attorney's fees and costs; and

(f) Such other legal or equitable relief as this Court deems just and proper under all the circumstances contained herein.

## JURY DEMAND

Plaintiff demands a trial by jury.

Date: June 7, 2024                                  Respectfully submitted,

                                          */s/Marty Steinberg*
                                          Marty Steinberg
                                          Florida Bar No. 187293
                                          HOGAN LOVELLS US LLP
                                          600 Brickell Avenue

Suite 2700
Miami, Florida 33131
Tel: 305-459-6500
Fax: 305-459-6550