UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-22206-MOORE/Elfenbein

COLE SIGNORELLO, *et al.*,

     Plaintiffs,

v.

SERRE FULTON MURPHY,

     Defendant.

_____/

**REPORT AND RECOMMENDATION
ON MOTION FOR DEFAULT JUDGMENT**

     **THIS CAUSE** is before the Court on Plaintiffs Cole Signorello and Porter Neubauer's ("Plaintiffs'") Motion for Default Judgment (the "Motion").  *See* ECF No. [20].  The Honorable K. Michael Moore referred the Motion to me "to take all necessary and proper action as required by law and/or to issue a Report and Recommendation regarding Plaintiffs' Motion for Default Judgment."  *See* ECF No. [33].  For the reasons explained below, I respectfully **RECOMMEND** that the Motion, **ECF No. [20]**, be **GRANTED in part and DENIED in part**.

**I.     BACKGROUND[1]**

     This lawsuit arises out of an altercation between Plaintiffs and Defendant Serre Fulton Murphy ("Defendant") while the three men were in Lisbon, Portugal.  *See generally* ECF No. [1].  Plaintiffs are 21-year-old college students who, at the time of the altercation, were on a weekend trip to Portugal while studying abroad in the United Kingdom.  *See* ECF No. [1] at 1–3.  Defendant

---

[1] The Court takes the facts in this Section from the allegations in the Complaint, which by his default Defendant has admitted.  *See, e.g.*, *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009); *TracFone Wireless, Inc. v. Hernandez*, 196 F. Supp. 3d 1289, 1298 (S.D. Fla. 2016) ("A defendant, by his default, admits the plaintiff's well-pleaded allegations of fact as set forth in the operative complaint." (quotation marks omitted)).

is a United States citizen who was then living in Lisbon.  *See* ECF No. [1] at 1–3.

At around 4 p.m. on November 10, 2023, Plaintiffs went to a Lisbon sandwich shop with a group of their study-abroad schoolmates.  *See* ECF No. [1] at 2.  There, they met Defendant, whom they did not know but who appeared to be about 35 years old.  *See* ECF No. [1] at 2.  After talking for about an hour and realizing they were all attending the same concert the next night, Plaintiffs, Defendant, and the rest of the students went to a rooftop bar.  *See* ECF No. [1] at 2–3. When Plaintiffs and their schoolmates left the bar at around 10:00 p.m. to return to their Airbnb, Defendant "followed them, essentially inviting himself."  *See* ECF No. [1] at 3.  At about 11 p.m., the group left the Airbnb for a club Defendant recommended, but "the students began to feel awkward" that Defendant "was accompanying them everywhere."  *See* ECF No. [1] at 3.  On the walk to the club, Defendant began to make "strange and inappropriate comments, including comments about the women in the group."  *See* ECF No. [1] at 3.

About an hour and a half later, Plaintiffs, Signorello's girlfriend, and two other male students left the club.  *See* ECF No. [1] at 4.  Defendant was waiting at the door, which made the group nervous because Plaintiffs believed he "was waiting outside the club to confront them."  *See* ECF No. [1] at 4.  Signorello told Defendant that the group was tired and were returning to their Airbnb to rest for the night; he said they would see him the next night at the concert.  *See* ECF No. [1] at 4.  Defendant became upset and "almost manic"; started following the group; and accused one of the male students, Harry, of stealing money from him, although he never said how and gave conflicting information about how much.  *See* ECF No. [1] at 4.  Harry denied stealing money from Defendant but offered to pay it back "just to get rid of the agitated" Defendant.  *See* ECF No. [1] at 4.

Signorello's girlfriend then suggested the group leave Defendant and return to the Airbnb,

which prompted Defendant to say vulgar things to her and mock her accent. *See* ECF No. [1] at 4. After she left, Defendant started circling the rest of the group, yelling at and menacing them. *See* ECF No. [1] at 5. When Harry took out his wallet and offered to get cash from an ATM to reimburse Defendant for the money he claimed he lost, Defendant grabbed the wallet and started to walk away. *See* ECF No. [1] at 5. Harry began videorecording Defendant, who took about $80 from the wallet, tore up the bills, and yelled: "You think this money means anything to me?!" *See* ECF No. [1] at 5. He told the group that "level of disrespect" could get them killed but said he would let them live. *See* ECF No. [1] at 5. It was about 2:30 a.m., and the group feared for their lives. *See* ECF No. [1] at 5.

Harry asked for his wallet back, but Defendant continued walking away with it and gestured for Harry to follow him. *See* ECF No. [1] at 5. Instead, the group went back to the club to talk to the bouncers, who directed them to nearby police. *See* ECF No. [1] at 5. The police then "confronted" Defendant, who had followed the group to the club, and found Harry's ID in the wallet Defendant was carrying. *See* ECF No. [1] at 5. After returning the wallet to Harry, the police advised the group, who had said they were afraid of Defendant, to walk away in the opposite direction. *See* ECF No. [1] at 5. They did, but Defendant followed them and "began yelling obscenities and threats." *See* ECF No. [1] at 6. Defendant "suddenly assaulted Harry, ripped his shirt, and began pummeling him." *See* ECF No. [1] at 6.

To help Harry, Neubauer "jumped on" Defendant and "took him to the ground." *See* ECF No. [1] at 6. Signorello "also attempted to subdue" Defendant because he felt the group's lives were in danger. *See* ECF No. [1] at 6. "Punches were thrown in this attempt to get away from" Defendant "and protect each other," leaving Neubauer with a gash over his left eyelid, bruises, and a broken watch. *See* ECF No. [1] at 6. When the altercation ended, Defendant "tried to make

himself a victim by yelling for help." *See* ECF No. [1] at 6.  The group "once again tried to run away from him, but" he continued to follow them.  *See* ECF No. [1] at 6.  Eventually, all the students got away from Defendant, made it back to the Airbnb, and went to sleep.  *See* ECF No. [1] at 6.

When Plaintiffs woke up, they saw Defendant had posted on social media that he had been attacked, assaulted, and robbed.  *See* ECF No. [1] at 6.  Defendant and other accounts associated with him — which may have belonged to his friends or may have been fake accounts Defendant "used or controlled" — had also posted threats directed at the group, including a blood emoji and messages about meeting up at the concert.  *See* ECF No. [1] at 6.  They sent direct messages to the group as well.  *See* ECF No. [1] at 6.  The posts and messages scared the group, so they skipped the concert and "went elsewhere for the day."  *See* ECF No. [1] at 7.  Police were at their Airbnb when they returned, investigating Defendant's allegation that they had initiated the altercation. *See* ECF No. [1] at 7.  Defendant's "police report contains provably false factual allegations against" Plaintiffs based on Defendant's "perjured sworn statement."  *See* ECF No. [1] at 7.

After explaining to the police that they had not assaulted or robbed Defendant but were in fact afraid of him, Signorello "asked if there were any problems," as the group "intended to leave the next day to go back to" school.  *See* ECF No. [1] at 7.  The officers said there was "no problem" and they could leave as planned.  *See* ECF No. [1] at 7.  Police also questioned Neubauer and Harry separately from the rest of the group and commented that their story "corroborated" the one Signorello told.  *See* ECF No. [1] at 7.  Ultimately, the police "took no action against" Plaintiffs or anyone else in their student group and assured them they were safe to stay in their Airbnb until they left Portugal.  *See* ECF No. [1] at 8.  Before the police left, however, Neubauer saw Defendant in the back of the police car.  Defendant rolled down the window, told Neubauer he knew where

in Tennessee he lives, and said he would see Neubauer there because he goes "every year."  *See* ECF No. [1] at 7.  Neubauer "felt very threatened" because Defendant had "apparently" done "research to determine" his parents' address in the United States.  *See* ECF No. [1] at 7.

After Plaintiffs and their schoolmates left Portugal, Defendant and "his associates" continued to send threatening messages to the group.  *See* ECF No. [1] at 8.  Defendant also "published and released defamatory and harmful information about" Plaintiffs to Washington & Lee University, their school in the United States, "intending to harm . . . their potential employment and reputations at school" and cause the college "to take adverse action against them."  *See* ECF No. [1] at 8.  And Defendant "targeted third-party readers in Miami, including" Signorello's sister, "knowing that his defamatory statements would cause harm to" their reputations in the city.  *See* ECF No. [1] at 8.  These statements include "dozens of emails, texts, tweets," and "social media comments" that "reside on the Internet," some of which publish Plaintiffs' names and attempt to "create an image of criminal conduct by" them.  *See* ECF No. [1] at 8–9.  Defendant made these statements knowing they "were false" because no one in the student group was "arrested or charged with any crime in Portugal, despite having two interactions with the police."  *See* ECF No. [1] at 9–10.  Defendant also knew the statements would severely injure" Plaintiffs' reputation.  *See* ECF No. [1] at 9.

As a result of Defendant's communications with Washington & Lee, the University "insisted on proceedings regarding" Defendant's allegations that they assaulted him, even after Signorello tried to "correct the misunderstanding."  *See* ECF No. [1] at 9.  Plaintiffs' study-abroad University in the UK also required them to appear at school offices to explain the altercation.  *See* ECF No. [1] at 9.  Both Universities "have indicated that the information they received from" Defendant "may result in disciplinary action" against Plaintiffs, which Plaintiffs' attorneys have

had to "forestall." *See* ECF No. [1] at 9. This is problematic because Plaintiffs' "academic merits and promise as blossoming students would normally be undisturbed," as both "have the academic drive and persistence to network and to begin building their future success." *See* ECF No. [1] at 11.

Defendants' contacts have also gone beyond Plaintiffs' schools and involved schoolmates to encompass people unconnected to the altercation. *See* ECF No. [1] at 9–10. For example, Defendant has sent Signorello's sister photos of himself with black eyes and has emailed both Plaintiffs' parents messages "stating that it was not good for them to leave matters as" they were and "implying that with a payment he would cease his unlawful conduct." *See* ECF No. [1] at 10. Defendant's "publications have caused serious embarrassment for" Plaintiffs and "pose a threat to their education[s] and prospective employment by falsely claiming" they "committed a crime." *See* ECF No. [1] at 10. Defendant "intended his defamatory statements" to "reach" and be "read by people in Miami and intended the statements to cause harm to" Plaintiffs' reputation. *See* ECF No. [1] at 10. And his statements continue to damage Plaintiffs because he "has failed to take corrective action to report his misrepresentation of facts and clear" their names, so their "universities, prospective employers, relatives," and friends "have a false narrative and impression of" them. *See* ECF No. [1] at 11.

For that reason, in June 2024, Plaintiffs filed this lawsuit against Defendant. *See generally* ECF No. [1]. The Complaint alleges four claims: (1) defamation (libel per se), (2) intentional infliction of emotional distress, (3) declaratory judgment, and (4) fraudulent inducement. *See* ECF No. [1] at 11–17. When Defendant failed to respond to the Complaint, Plaintiffs moved for default, *see* ECF No. [8], which the Clerk granted in July 2024, *see* ECF No. [9]. They then moved the Court for a default judgment. *See* ECF No. [11]. Before the Court could act on that motion,

6

however, Defendant moved to set aside the Clerk's default, arguing he was improperly served. *See* ECF No. [13].  The Court denied Defendant's motion because it found "service of process was properly effectuated" on him and he had not provided any other "good cause" for setting aside the default.  *See* ECF No. [18] at 10–11.

Plaintiffs then filed the current Motion, *see* ECF No. [20], which they support with three affidavits: one from Signorello, *see* ECF No. [22]; ECF No. [22-1]; one from Neubauer, *see* ECF No. [23]; ECF No. [23-1]; and one from their attorney, *see* ECF No. [21]; ECF No. [21-1].  In the Motion, Plaintiffs ask the Court to enter a judgment awarding them money damages on their defamation, emotional distress, and fraudulent inducement claims.  *See* ECF No. [20] at 2. Specifically, each Plaintiff requests $25,000 in damages "for reputational harm and emotional distress caused by Defendant's defamatory statements." *See* ECF No. [20] at 10.  They also request "attorney's fees already spent totaling $109,674.97" and "$25,000 each for attorney's fees anticipated for their future need to engage counsel to defend against Defendant's defamatory statements in job or university application processes." *See* ECF No. [20] at 10.  And they "request any additional, future attorney's fees related to the prosecution of this action and enforcement of the final judgment through its satisfaction, plus pre- and post-judgment interest."  *See* ECF No. [20] at 10.

On their declaratory judgment claim, which they purport to bring under the Florida Declaratory Judgment Act, *see* ECF No. [1] at 15, Plaintiffs ask the Court to declare that: (1) "Defendant's actions be enjoined," (2) he "cease and desist" his harmful communications, and (3) "any content he transmitted" be "withdrawn and corrected."  *See* ECF No. [20] at 2.  Framed differently, Plaintiffs ask "that the Court enjoin Defendant and order Defendant to cease and desist publishing defamatory statements regarding" Plaintiffs over the Internet or through emails, text,

and social media posts, including "stating, or implying, that Plaintiffs harmed" him.  *See* ECF No. [20] at 7.  They also ask the Court to order Defendant "to cease any contact with Plaintiffs' employers, universities, friends," family, and Plaintiffs themselves.  *See* ECF No. [20] at 7. Finally, they ask the Court to "order Defendant to remove any existing social media or other internet posts making statements regarding" Plaintiffs "so that the ongoing harm from these existing posts can be reduced."  *See* ECF No. [20] at 7.

In his Response to the Motion (the "Response"), Defendant contends that the Motion and supporting affidavits "fail to demonstrate actual damage and legal entitlement to the damage claimed."  *See* ECF No. [27] at 1.  Although Defendant does not challenge Plaintiffs' entitlement to default judgment,[2] *see generally* ECF No. [27], he argues that Plaintiffs "have failed to plead any statutory basis or contractual provision to support an award of attorney's fees," which is required to overcome the "American Rule" that parties bear their own litigation costs, *see* ECF No. [27] at 2.  Defendant argues this failure is "because there is none."  *See* ECF No. [27] at 2. Defendant also argues that, even if there were support for awarding attorney's fees, Plaintiffs have failed to: (1) properly plead "they were damaged in the form" of "costs and attorney's fees",  (2) "demonstrate by sufficient evidence what portion of their attorney's fee and costs are unrelated to this" lawsuit, or (3) provide "legal or factual support for an award of attorney's fees to 'counsel in Portugal'" or "an award of future attorney's fees."  *See* ECF No. [27] at 3–4.

Plaintiffs did not file a reply in support of the Motion.  They did, however, file an affidavit

---

[2] Defendant attempted to dispute the merits of Plaintiffs' claims through a counterclaim, *see* ECF No. [24], which Plaintiffs moved to strike "as procedurally improper because default ha[d] already been entered against" him, *see* ECF No. [28] at 3.  Plaintiffs also asked the Court to "consider using its inherent power to award sanctions for Defendant's bad faith attempt to yet again try to defame and intimidate Plaintiffs, without any legal basis."  *See* ECF No. [28] at 5.  Before the Court could address Defendant's counterclaim, Plaintiffs' motion to strike it, or Plaintiffs' request for sanctions, the Parties agreed to withdraw all three filings.  *See* ECF No. [31]; ECF No. [31-1]; ECF No. [32].

indicating that Defendant is not "currently in military service," in "active duty" or otherwise. *See* ECF No. [36] at 1–2. This Court required the affidavit, as 50 U.S.C. App'x § 521 requires "a plaintiff who seeks the entry of a default judgment in its favor against an individual" to file such an affidavit. *See* ECF No. [34]. The Motion is now ripe for review.

## II.     LEGAL STANDARDS

### A.  Default Judgment Standard

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55 (a). After the clerk enters a default, the Court is authorized to enter a final default judgment if the party seeking it applies for one. *See* Fed. R. Civ. P. 55 (b)(2); *Surtain v. Hamlin Terrace Found*., 789 F.3d 1239, 1244 (11th Cir. 2015) ("When a defendant has failed to plead or defend, a district court may enter judgment by default.").

"A 'defendant, by his default, admits the plaintiff's well-pleaded allegations of fact' as set forth in the operative complaint." *Hernandez*, 196 F. Supp. 3d at 1298 (quoting *Eagle Hosp. Physicians*, 561 F.3d at 1307). But the defendant "is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Surtain*, 789 F.3d at 1245 (quotation marks omitted). And a defendant's default does not automatically permit the Court to enter a default judgment: "Because the defendant is not held to admit facts that are not well pleaded or to admit conclusions of law, the court must first determine whether there is a sufficient basis in the pleading for the judgment to be entered." *Chanel, Inc. v. Replicachanelbag*, 362 F. Supp. 3d 1256, 1259 (S.D. Fla. 2019); *see also Surtain*, 789 F.3d at 1245 ("Entry of default judgment is only warranted when there is a sufficient basis in the pleadings for the judgment entered." (quotation marks omitted)).

The Eleventh Circuit has "interpreted the standard" for evaluating whether a sufficient

basis for default judgment exists "as being akin to that necessary to survive a motion to dismiss for failure to state a claim." *Surtain*, 789 F.3d at 1245; *see also Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) ("[A] default judgment cannot stand on a complaint that fails to state a claim."). Of course, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "This plausibility standard is met 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Surtain*, 789 F.3d at 1245 (quoting *Iqbal*, 556 U.S. at 678).

### B. Defamation

"To prove defamation under Florida law, a plaintiff must establish the following elements: (1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Johnston v. Borders*, 36 F.4th 1254, 1275 (11th Cir. 2022) (citing *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1105–06 (Fla. 2008)). Put another way, "defamation is generally defined as the unprivileged publication of false statements which naturally and proximately result in injury to another." *Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1317 (S.D. Fla. 2020) (quotation marks omitted).

"Words are defamatory under Florida law when they tend to subject one to hatred, distrust, ridicule, contempt or disgrace"; "to injure one in one's business or profession"; or "to deter third persons from associating or dealing with him." *Johnston*, 36 F.4th at 1275, 1285 (quotation marks omitted); *see also Bongino*, 477 F. Supp. 3d at 1317 (noting a "defamatory statement 'tends to harm the reputation of another by lowering him or her in the estimation of the community'"

(quoting *Rapp*, 997 So. 2d 1108–09)). "Even if the words are not literally false, they may still be defamatory if the defendant juxtaposes a series of facts so as to imply a defamatory connection between them, or creates a defamatory implication by omitting facts." *Johnston*, 36 F.4th at 1275 (quotation marks omitted). On the other hand, "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions by the First Amendment." *Turner v. Wells*, 879 F.3d 1254, 1262 (11th Cir. 2018).

"In determining whether language is defamatory under Florida law, the publication made should be construed as the common mind would understand it, and not in their mildest or most grievous sense." *Johnston*, 36 F.4th at 1275 (alteration adopted, quotation marks omitted). "The publication must also be considered in its totality and in context rather than piecemeal and in isolation." *Id.* (quotation marks omitted). Publication, in this context, "is communication of the statement to a third person." *See Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1119–20 (S.D. Fla. 2021) (quotation marks omitted). "Where a statement is subject to two possible interpretations and one is defamatory, it is for the jury to decide whether the statement is in fact defamatory." *Johnston*, 36 F.4th at 1275. Further, it "is not necessary that the plaintiff be designated by name; it is enough that there is such a description of or reference to him that those who hear or read reasonably understand the plaintiff to be the person intended. Extrinsic facts may make it clear that a statement refers to a particular individual although the language used appears to defame nobody." *See id.* at 1276 (citation and quotation marks omitted).

### C.  Intentional Infliction of Emotional Distress

"Under Florida law, to state a claim for intentional infliction of emotional distress, the following four elements must be shown: (1) extreme and outrageous conduct; (2) an intent to cause, or reckless disregard to the probability of causing, emotional distress; (3) severe emotional distress

suffered by the plaintiff; and (4) that the conduct complained of caused the plaintiff's severe emotional distress." *Leach v. Dist. Bd. of Trs. of Palm Beach*, 244 F. Supp. 3d 1334, 1337 (S.D. Fla. 2017). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* at 1337–38 (quoting *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278–79 (Fla. 1985)).

"The question of what constitutes outrageous conduct is judged by an objective test." *Id.* at 1338. And it is "a question of law for the court to resolve—not a question of fact for a jury." *See Noah v. Assor*, 379 F. Supp. 3d 1284, 1299 (S.D. Fla. 2019); *Glegg v. Van Den Hurk*, 379 So. 3d 1171, 1174 (Fla. 4th DCA 2024) ("The question of whether conduct is sufficiently outrageous enough to support an [intentional infliction of emotional distress] claim is a question of law, not a question of fact."). When resolving the question, "Florida courts have construed the parameters of this cause of action extremely narrowly. Whether a claim for intentional infliction of emotional distress will be held is highly dependent on the allegations in the particular case." *Leach*, 244 F. Supp. 3d at 1338.

### D. Declaratory Judgment

The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration" in cases "of actual controversy within" their jurisdictions. *See* 28 U.S.C. § 2201(a). "The operation of the Declaratory Judgment Act is procedural only." *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950) (alteration adopted, quotation marks omitted). Indeed, with the Declaratory Judgment Act,

"Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction." *Id.*

Similarly, under the Florida Declaratory Judgment Act, the "circuit and county courts have jurisdiction within their respective jurisdictional amounts to declare rights, status, and other equitable or legal relations whether or not further relief is or could be claimed." *See* Fla. Stat. § 86.011. "Florida's Declaratory Judgment Act, found in Chapter 86 of the Florida Statutes, is a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts; it does not confer any substantive rights." *Tony v. Evanston Ins. Co.*, 724 F. Supp. 3d 1282, 1289 (S.D. Fla. 2024); *see also Coccaro v. Geico Gen. Ins. Co.*, 648 F. App'x 876, 881 (11th Cir. 2016).

"In a diversity jurisdiction case like this one, a court will apply federal law if the matter at hand is procedural, and will apply the law of the forum state if the matter is substantive." *Tony*, 724 F. Supp. 3d at 1289 (quoting *Coccaro*, 648 F. App'x at 881). "Declaratory judgment acts are procedural in nature and, thus under the Erie doctrine, this Court must apply federal procedural law." *Krauser v. BioHorizons, Inc.*, 903 F. Supp. 2d 1337, 1346 n.6 (S.D. Fla. 2012), *aff'd*, 622 F. App'x 890 (11th Cir. 2015)). Indeed, "[b]ecause the Florida Declaratory Judgment Act is procedural as opposed to substantive," district courts do not err in construing a claim for declaratory relief "exclusively" under the federal Declaratory Judgment Act. *See Coccaro*, 648 F. App'x at 881; *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1138 n.3 (11th Cir. 2005) ("There is little doubt, and the parties do not argue otherwise, that the district court had to apply the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.,* rather than the state declaratory judgment act, in this action.").

This is true even if a complaint "purports to assert a claim for declaratory relief based on

Chapter 86 of the Florida Statutes" alone. *See Addison Ins. Co. v. 4000 Island Boulevard Condo. Ass'n, Inc.*, 263 F. Supp. 3d 1278, 1279 (S.D. Fla. 2015) ("While the sole count in the amended complaint purports to assert a claim for declaratory relief based on Chapter 86 of the Florida Statutes, . . . Florida's procedural rules are inapplicable because this is a diversity case. . . . Accordingly, the complaint will be construed as purporting to state a claim for relief pursuant to 28 U.S.C. § 2201." (citation and quotation marks omitted)); *Garden Aire Vill. S. Condo. Ass'n Inc. v. QBE Ins. Corp.*, 774 F. Supp. 2d 1224, 1227 (S.D. Fla. 2011). And it is true whether the lawsuit is filed directly in federal court, *see Tony*, 724 F. Supp. 3d at 1289 ("[T]he legal standard for reviewing a declaratory judgment claim in a diversity jurisdiction action in federal court is exclusively under 28 U.S.C. § 2201."), or is removed from state court, *see Krauser*, 903 F. Supp. 2d at 1346 n.6 ("When a declaratory judgment action has been removed to federal court, it is treated as though it had been filed under the federal declaratory judgment act.").

"In all cases arising under the Declaratory Judgment Act," the "threshold question is whether a justiciable controversy exists." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995). "The party who invokes a federal court's authority must show, at an irreducible minimum, that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Id.* (quotation marks omitted); *see also Garden Aire*, 774 F. Supp. 2d at 1227. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941); *see also Addison*, 263 F. Supp. 3d at 1279. "At a minimum, a

claim for declaratory judgment must be supported by allegations from which a substantial continuing controversy may reasonably be inferred." *Addison*, 263 F. Supp. 3d at 1279–80.

### E. Fraudulent Inducement

"To establish a claim of fraud in the inducement under Florida law, a plaintiff must establish that: (1) the representor made a false statement concerning a material fact; (2) the representor knew or should have known that the representation was false; (3) the representor intended to induce another party to act in reliance on the false statement; and (4) the party acted in justifiable reliance on the representation and was injured as a result." *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022, 1029–30 (11th Cir. 2017) (citing *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010)); *see also Leader Glob. Sols., LLC v. Tradeco Infraestructura, S.A. DE C.V.*, 155 F. Supp. 3d 1310, 1319 (S.D. Fla. 2016). In doing so, plaintiffs "must meet the heightened pleading standard of" Federal Rule of Civil Procedure 9(b). *See Francois v. Hatami*, 565 F. Supp. 3d 1259, 1267 (S.D. Fla. 2021); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

Specifically, plaintiffs "must allege precisely what statements were made, the time and place of each such statement and the person responsible for making it, the content of such statements and the manner in which they misled the plaintiff, and what the defendants obtained as a consequence of the fraud." *See Francois*, 565 F. Supp. 3d at 1267 (alteration adopted, quotation marks omitted); *Green Bullion*, 872 F. Supp. 2d at 1361 (requiring allegations about "who made the false statement, the substance of the false statement, the time frame in which it was made and the context in which the statement was made" (quotation marks omitted)). Even so, the "elements of fraud—particularly including intent and knowledge—may be, and often are, proven by circumstantial evidence." *See Horizon Yachts*, 849 F.3d at 1030. "With respect to the rule of

justifiable reliance," the Eleventh Circuit has said that "when negotiating or attempting to compromise an existing controversy over fraud and dishonesty[,] it is unreasonable to rely on representations made by the allegedly dishonest parties." *Mergens v. Dreyfoos*, 166 F.3d 1114, 1117–18 (11th Cir. 1999) (alteration adopted, quotation marks omitted).

### F.  Entitlement to Attorney's Fees and Costs

"In the United States, parties are ordinarily required to bear their own attorney's fees — the prevailing party is not entitled to collect from the loser." *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 602 (2001); *see also Johnson v. Omega Ins. Co.*, 200 So. 3d 1207, 1214 (Fla. 2016) ("Generally, the custom in American law is that each party is responsible for his or her own attorney's fees, regardless of the outcome of the action."). "Under this American Rule," courts "follow a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Buckhannon*, 532 U.S. at 602 (quotation marks omitted); *see also* Fed. R. Civ. P. 54(d)(2)(A) ("A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages.").

Regardless of the authorizing law, the "fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *See Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988); *Torreyes v. Godiva Chocolatier, Inc.*, 424 F. Supp. 3d 1276, 1285 (S.D. Fla. 2019).  Ultimately, an award of attorney's fees "is within the sole discretion of the trial court." *Underwriters at Int. Under Bailee Ins. Pol'y No. 09RTAMIA1158 v. SeaTruck, Inc.*, 858 F. Supp. 2d 1334, 1342 (S.D. Fla. 2012); *see also Torreyes*, 424 F. Supp. 3d at 1284–85.

## III.   DISCUSSION

As explained above, Plaintiffs move for default judgment against Defendant because he has not responded to the Complaint and Judge Moore denied his motion to set aside the Clerk's default.  *See* ECF No. [20] at 1–2.  For default judgment to be warranted, there must be a sufficient basis in the pleadings to support it.  *See Surtain*, 789 F.3d at 1245; *Chanel, Inc*, 362 F. Supp. 3d at 1259.  There is a sufficient basis to support default judgment when the Complaint states a claim to relief that is plausible on its face.  *See Surtain*, 789 F.3d at 1245; *Chudasama*, 123 F.3d at 1370 n.41; *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.  And a claim is plausible on its face if it allows the Court to draw the reasonable inference that Defendant is liable for the misconduct alleged.  *See Surtain*, 789 F.3d at 1245; *Iqbal*, 556 U.S. at 678.  Through this lens, the Court reviews the claims in the Complaint.

The Complaint alleges four counts: (1) defamation, (2) intentional infliction of emotional distress, (3) declaratory judgment, and (4) fraudulent inducement.  *See* ECF No. [1].  As relief, Plaintiffs request not only a judgment against Defendant but also "monetary damages," an order requiring Defendant "to cease and desist," attorney's fees, costs, and interest.  *See* ECF No. [1] at 13, 14, 16–17.  The Court addresses each claim and request for relief in turn.

### A.  Count I - Defamation

Starting with Count I, to prove defamation under Florida law, Plaintiffs must establish that (1) Defendant communicated his statements to a third person; (2) the statements are false; (3) Defendant acted at least negligently as to the falsity of his statements; (4) Plaintiffs suffered actual damages; and (5) Defendant's statements are defamatory.  *See Johnston*, 36 F.4th at 1275; *Corsi*, 519 F. Supp. 3d at 1119–20; *Rapp*, 997 So. 2d at 1105–06.  Of course, the First Amendment protects true statements, statements that are not readily capable of being proven false, and

statements of pure opinion. *See Turner*, 879 F.3d 1254 at 1262. And where a statement is subject to two possible interpretations and one is defamatory, it is for the jury to decide whether the statement is, in fact, defamatory. *See Johnston*, 36 F.4th at 1275.

In the Complaint, Plaintiffs allege that Defendant intentionally made numerous false statements, including to the police in Lisbon, on social media, to their universities, and to their family members. For example, Plaintiffs allege that, following their altercation with Defendant, he (Defendant) falsely posted on social media that he had been attacked, assaulted, and robbed and then he filed a false report with the Lisbon police "contain[ing] provably false factual allegations" against them "based on a perjured sworn statement." *See* ECF No. [1] at 6-7. While these vague allegations would not be sufficient to state a claim for defamation, the Complaint contains additional factual allegations detailing the events that occurred after Plaintiffs left Portugal. Specifically, they allege that Defendant "published and released defamatory and harmful information about" Plaintiffs to Washington & Lee University, their school in the United States, "intending to harm . . . their potential employment and reputations at school" and cause the college "to take adverse action against them." *See* ECF No. [1] at 8. This consisted of "dozens of emails, texts, tweets," and "social media comments" that "reside on the Internet," some of which publish Plaintiffs' names and attempt to "create an image of criminal conduct by" them by "stating or implying that [Plaintiffs] had committed crimes," and one image of "a doctored picture of [Defendant], claiming" that Plaintiffs assaulted him. *See* ECF No. [1] at 8. The Complaint further alleges that in doing so, Defendant "targeted third-party readers in Miami, including" Signorello's sister, "knowing that his defamatory statements would cause harm to" their reputations in the city. *See* ECF No. [1] at 8. Defendant made these statements knowing they "were false" because no one in the student group was "arrested or charged with any crime in Portugal, despite having two

interactions with the police." *See* ECF No. [1] at 9–10.  Defendant also knew the statements would severely injure" Plaintiffs' reputation.  *See* ECF No. [1] at 9.

These statements involving Plaintiffs' purported physical assault of Defendant are not a matter of pure opinion, are not subject to multiple interpretations, and are the type of statements that can be readily proven as false.  Through its allegations, as detailed above, Plaintiffs have adequately alleged that Defendant communicated these false statements to third parties, such as by posting them on the Internet, communicating them to their universities, and to their family members, and that he did so, knowing the falsity of the statements.  Count I, therefore, satisfies the first three elements of defamation.

Turning to the last two elements — whether Plaintiffs suffered damages and whether the statements are defamatory, the Court has little difficulty concluding that the Complaint sufficiently alleges these elements.  Regarding damages, Plaintiffs alleged that, as a result of Defendant's communications with Washington & Lee, the University "insisted on proceedings regarding" Defendant's allegations that they assaulted him, even after Signorello tried to "correct the misunderstanding."  *See* ECF No. [1] at 9.  Plaintiffs' study-abroad University in the UK also required them to appear at school offices to explain the altercation.  *See* ECF No. [1] at 9.  Both Universities "have indicated that the information they received from" Defendant "may result in disciplinary action" against Plaintiffs, which Plaintiffs' attorneys have had to "forestall."  *See* ECF No. [1] at 9.  Further, Defendant's "publications have caused serious embarrassment for" Plaintiffs and "pose a threat to their education[s] and prospective employment by falsely claiming" they "committed a crime."  *See* ECF No. [1] at 10.  And his statements continue to damage Plaintiffs because he "has failed to take corrective action to report his misrepresentation of facts and clear" their names, so their "universities, prospective employers, relatives," and friends "have a false

narrative and impression of" them.  *See* ECF No. [1] at 11.

These allegations also overlap with the final element — whether the statements are defamatory.  Under Florida law, words are defamatory "when they tend to subject one to hatred, distrust, ridicule, contempt or disgrace"; "to injure one in one's business or profession"; or "to deter third persons from associating or dealing with him." *Johnston*, 36 F.4th at 1275, 1285.  The Complaint's allegations that the statements subjected Plaintiffs to disciplinary actions at their University, and more broadly, statements that Plaintiffs engaged in criminal conduct, which would naturally deter third persons from associating with them, qualify as defamatory statements.  Thus, the Complaint sufficiently alleges the fourth and fifth elements of defamation.

Having met all required elements of defamation, Plaintiffs have stated a claim to relief that is plausible on its face.  *See Iqbal*, 556 U.S. at 678; *Surtain*, 789 F.3d at 1245; *Chudasama*, 123 F.3d at 1370 n.41.  As a result, Plaintiffs are entitled to final default judgment on Count I.  *See Chanel, Inc.*, 362 F. Supp. 3d at 1259; *Surtain*, 789 F.3d at 1245.  For that reason, I respectfully **RECOMMEND** that final default judgment as to Count I **BE ENTERED** in Plaintiffs' favor on Count I.  *See* Fed. R. Civ. P. 55 (b)(2); *Surtain*, 789 F.3d at 1244.

### B.  Count II - Intentional Infliction of Emotional Distress

In Count II, Plaintiffs seek to recover damages for intentional infliction of emotional distress.  To state such a claim under Florida law, Plaintiffs must establish four elements: (1) Defendant's conduct was extreme and outrageous; (2) Defendant intended to cause, or had reckless disregard to the probability of causing, emotional distress to Plaintiffs; (3) Plaintiffs suffered severe emotional distress; and (4) Defendant's conduct is the but-for cause of Plaintiffs' severe emotional distress.  *See Leach*, 244 F. Supp. 3d at 1337.

Here, the Court finds that Plaintiffs have sufficiently alleged facts to supports the second,

third, and fourth elements.  Where the Complaint falters, though, is on the first element — whether Defendant's conduct was extreme and outrageous.  To satisfy this element, Defendant's conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *Id.* at 1337–38 (quoting *Metropolitan Life Ins.*, 467 So. 2d at 278–79). When determining what constitutes outrageous conduct, the Court must judge this through an objective test in which "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *Id.* at 1338. When resolving the question, "Florida courts have construed the parameters of this cause of action extremely narrowly." *Id.*

Given this high standard, courts in Florida have determined that the following types of allegations are insufficient to satisfy the first element of intentional infliction of emotional distress: "vicious" and racist "verbal harassment and abuse," "false accusations of sexual relations in the workplace," "false accusations of fraud resulting in arrest," "public statements that the plaintiff had acted immorally, illegally, and unprofessionally," "the commission of assault and battery," and "falsely telling a mother that her son had committed suicide." *See Williams v. Worldwide Flight Svcs. Inc.*, 877 So. 2d 869, 871 (Fla. 3d DCA 2004); *Dowling v. Blue Cross of Fla., Inc.*, 338 So. 2d 88, 88-89 (Fla. 1st DCA 1976); *Valdes v. GAB Robins N. Am., Inc.*, 924 So. 2d 862, 865-66 (Fla. 3d DCA 2006); *Saadi v. Maroun*, No. 07-CV-1976-T-24-MAP, 2008 WL 4194824, at *5 (M.D. Fla. Sept. 9, 2008); *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012); *Tello v. Royal Caribbean Cruises, Ltd.*, 939 F. Supp. 2d 1269, 1277-78 (S.D. Fla. 2013). While allegations of this nature "reflect conduct that is reprehensible, objectionable, and offensive," without more, they are "insufficient under Florida law to support a cause of action for intentional infliction of emotional distress." *Williams*, 877 So. 2d at 870.

Here, Plaintiffs allege that the outrageous conduct consisted of: (1) Defendant "deliberately and recklessly caus[ing] harm" to their "reputations by publishing false statements, intended to be read by people in Miami and intended to cause harm" to Plaintiffs in Miami; (2) Defendant attempting to ruin Plaintiffs' college careers by contacting their colleges; (3) Defendant knowingly making Plaintiffs the "targets of cyberbullying and public humiliation;" (4) Defendant "deliberately instill[ing], with threats of physical violence and intimidation, fear and trepidation" in Plaintiffs "about their safety and well-being;" and (5) Defendant "refus[ing] to rectify his actions despite requests to do so." *See* ECF No. [1] at 14. Although these allegations reveal offensive, unpleasant, and objectionable conduct, these allegations simply do not rise to the level of outrageous conduct that is so extreme it transcends all bounds of decency and that would be "regarded as atrocious, and utterly intolerable in a civilized community" as required by Florida law. *Leach*, 244 F. Supp. 3d at 1338. Without conduct that rises to this level, Plaintiffs have failed to allege the first element of intentional infliction of emotional distress.

Thus, Count II fails to state a claim for relief. *See Iqbal*, 556 U.S. at 678; *Surtain*, 789 F.3d at 1245; *Chudasama*, 123 F.3d at 1370 n.41. By failing to adequately allege a claim for intentional infliction of emotional distress, Plaintiffs are not entitled to final default judgment on Count II. *See Chanel, Inc.*, 362 F. Supp. 3d at 1259; *Surtain*, 789 F.3d at 1245. For that reason, I respectfully **RECOMMEND** that Plaintiff's request for a final default judgment as to Count II **BE DENIED**. *See* Fed. R. Civ. P. 55 (b)(2); *Surtain*, 789 F.3d at 1244.

### C.  Count III - Declaratory Judgment

Count III alleges a claim under the Florida Declaratory Judgment Act, Florida Statute § 86.011. However, Florida's Declaratory Judgment Act "is a procedural mechanism that confers subject matter jurisdiction on Florida's circuit and county courts; it does not confer any substantive

rights." *Tony*, 724 F. Supp. 3d at 1289. "In a diversity jurisdiction case like this one, a court will apply federal law if the matter at hand is procedural, and will apply the law of the forum state if the matter is substantive." *Id.* (quoting *Coccaro*, 648 F. App'x at 881). And "[b]ecause the Florida Declaratory Judgment Act is procedural as opposed to substantive," the Court construes the claim in Count III for declaratory relief "exclusively" under the federal Declaratory Judgment Act, even though Plaintiffs specifically plead it under § 86.011 of the Florida Statutes. *See Coccaro*, 648 F. App'x at 881; *Manuel*, 430 F.3d at 1138 n.3; *Addison Ins. Co.*, 263 F. Supp. 3d at 1279.

Turning to the federal Declaratory Judgment Act, it authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration" in cases "of actual controversy within" their jurisdictions. *See* 28 U.S.C. § 2201(a). "In all cases arising under the Declaratory Judgment Act," the "threshold question is whether a justiciable controversy exists." *Atlanta Gas Light*, 68 F.3d at 414. "The party who invokes a federal court's authority must show, at an irreducible minimum, that at the time the complaint was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition." *Id.* (quotation marks omitted); *see also Garden Aire*, 774 F. Supp. 2d at 1227. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co.*, 312 U.S. at 273; *see also Addison*, 263 F. Supp. 3d at 1279.

In Count III, Plaintiffs allege there is "a bona fide, actual, present practical need for the declaration because [Defendant] has used false and fraudulent means to disseminate false information" about the Plaintiffs, which they dispute. *See* ECF No. [1] at 15. They further ask the

Court to make a "declaration that [Defendant's] actions must cease and desist and any content he transmitted must be withdrawn and corrected." *Id.* In the Motion, Plaintiffs reiterate that the relief they seek is an injunction ordering Defendant "to cease and desist publishing statements regarding the Plaintiffs," "including but not limited to Internet, emails, text, and social media posts, including but not limited to any allegation stating, or implying, that Plaintiffs harmed Defendant." *See* ECF No. [20] at 7. Plaintiffs further elaborate that they seek injunctive relief that orders Defendant "to cease any contact with Plaintiffs' employers, universities, friends and family regarding Plaintiffs," to "cease any contact, including contact through social media, with Plaintiffs or other individuals connected to Plaintiffs, concerning Plaintiffs," and to "remove any social media or other internet posts making statements regarding the Plaintiffs so that the ongoing harm from these existing posts can be reduced." *See* ECF No. [20] at 7-8 (citing to two decisions to support the proposition that Plaintiffs are entitled to "permanent injunction[s]."").

In requesting this relief, Plaintiffs are not actually asking the Court to "declare the[ir] rights" in an existing controversy between Plaintiffs and Defendant under 28 U.S.C. § 2201(a). Instead, Plaintiffs are asking the Court to enter a permanent injunction in which it enjoins Defendant from taking specified actions in the future (i.e. making statements about Plaintiffs or making contact with Plaintiffs) and affirmatively ordering him to take specific actions to withdraw and correct his false statements. The problem with the relief Plaintiffs seek in Count III and in their Motion is that they conflate two forms of equitable relief — a declaratory judgment and a permanent injunction. These are not one in the same.

Rather, "Congress plainly intended declaratory relief to act as an alternative to the strong medicine of the injunction." *See Steffel v. Thompson*, 415 U.S. 452, 466 (1974); *see also Zwickler v. Koota*, 389 U.S. 241, 254 (1967) (stating that "a request for a declaratory judgment that a state

statute is overbroad on its face must be considered independently of any request for injunctive relief against the enforcement of that statute."). "And while declaratory relief can sometimes have much the same practical effect as injunctive relief, it differs legally and materially" and a declaratory judgment, which "is a milder remedy," "does not, in itself, coerce any party or enjoin any future action." *See Brito v. Garland*, 22 F.4th 240, 251 (1st Cir. 2021) (quoting *Ulstein Mar., Ltd. v. United States*, 833 F.2d 1052, 1055 (1st Cir. 1987)); *see also Musselman v. Blue Cross & Blue Shield of Alabama*, 684 F. App'x 824, 832 (11th Cir. 2017) (Tjoflat, J., concurring specifically) (discussing the differences between declaratory judgments and injunctive relief and explaining that when Congress "passed the Declaratory Judgment Act," it "intended to create a remedy to supplement—not supplant—the remedies traditionally available at law and equity," such as injunctive relief).

In short, Count III fails to state a claim for relief under the federal Declaratory Judgment Act as it fails to seek a declaration of Plaintiffs' rights in the present controversy involving Defendant. *See Iqbal*, 556 U.S. at 678; *Surtain*, 789 F.3d at 1245; *Chudasama*, 123 F.3d at 1370 n.41. Because injunctive relief is not the same as a declaration of rights, Plaintiffs have not adequately alleged a claim for declaratory relief and are not entitled to final default judgment on Count III. *See Chanel, Inc.*, 362 F. Supp. 3d at 1259; *Surtain*, 789 F.3d at 1245. For that reason, I respectfully **RECOMMEND** that Plaintiff's request for a final default judgment as to Count III **BE DENIED**. *See* Fed. R. Civ. P. 55 (b)(2); *Surtain*, 789 F.3d at 1244.

### D. Count IV - Fraudulent Inducement

Finally, the Court turns to Plaintiffs' claim for fraudulent inducement in Count IV of the Complaint to determine whether it states a claim for relief.[3] "To establish a claim of fraud in the

---

[3] The Court also notes that Complaint is a shotgun pleading. While Count I only realleges and incorporates

inducement under Florida law, a plaintiff must establish that: (1) the representor made a false statement concerning a material fact; (2) the representor knew or should have known that the representation was false; (3) the representor intended to induce another party to act in reliance on the false statement; and (4) the party acted in justifiable reliance on the representation and was injured as a result." *Glob. Quest*, 849 F.3d at 1029–30 (citing *Butler*, 44 So. 3d at 105). Under Rule 9(b), Plaintiffs "must meet the heightened pleading standard," meaning they must state with particularity the circumstances constituting fraud or mistake. *See Francois,* 565 F. Supp. 3d at 1259 (quoting Fed. R. Civ. P. 9(b)). To meet this standard, Plaintiffs "must allege precisely what statements were made, the time and place of each such statement and the person responsible for making it, the content of such statements and the manner in which they misled the plaintiff, and what the defendants obtained as a consequence of the fraud." *Id.* at 1267 (alteration adopted, quotation marks omitted). With that said, the "elements of fraud—particularly including intent and knowledge—may be, and often are, proven by circumstantial evidence." *See Horizon Yachts*, 849 F.3d at 1030.

With these principles in mind, the Court finds that Plaintiffs have not pled sufficient factual matter to state a claim for fraudulent inducement. Starting with the first two elements, whether Defendant made a false statement concerning a material fact and whether Defendant knew the statement was false, Plaintiffs have alleged that Defendant made "false statements" about Plaintiffs to Plaintiffs, "their relatives, friends, schools, and employers." *See* ECF No. [1] at 16. Plaintiffs, however, can only allege a claim for fraudulent inducement involving representations made to

---

by reference the general allegations in paragraphs 1 though 69, the remaining counts reallege all preceding allegations. Therefore, the intentional infliction of emotional distress count contains all defamation allegations; the declaratory judgment count contains all allegations of defamation and intentional infliction of emotional distress; and the fraudulent inducement count contains all allegations of defamation, intentional infliction of emotional distress, and declaratory judgment.

them in particular; they cannot use statements made to their parents, other relatives, or friends to support this claim, so the Court focuses its analysis on the alleged false statements that Defendant made to Plaintiffs directly. *See Mergens*, 166 F.3d at 1118 (stating that the plaintiffs "had no right to rely on any representation" the defendant made "to a third party" to support claim for fraudulent inducement).

Focusing then on the representations Defendant made to Plaintiffs, the Complaint alleges that, on the day following the altercation with Defendant, which would be November 11, 2023, Defendant "posted a false account of how he had been attacked, violently assaulted, and money was stolen from him" on a "number of social media contacts with the group," referring to Plaintiffs and their friends. *See* ECF No. [1] at 6. The Court's review of the Complaint reveals there are no allegations involving specific misrepresentations made directly to Plaintiffs, so the Court confines its fraudulent inducement analysis to these specific statements. Addressing the second element, the Complaint is replete with references that Defendant knew he made false statements when claiming that Plaintiffs attacked him. *See generally* ECF No. [1]. Based on the foregoing, the Court finds that Plaintiffs have sufficiently alleged the first two elements of fraudulent inducement and moves on to the next two elements, which are problematic for Plaintiffs' claim as explained below.

The third element requires proof that Defendant "intended to induce [Plaintiffs] to act in reliance on the false statement" while the fourth element is that Plaintiffs "acted in justifiable reliance on the representation and was injured as a result." *Glob. Quest*, 849 F.3d at 1029–30 (citing *Butler*, 44 So. 3d at 105). The Complaint does not plead facts to support either of these elements. As to the former, again focusing on the allegations made to Plaintiffs and not anyone else, there are no allegations that Defendant intended to induce Plaintiffs to act on the statements

he made to them through social media stating that he had been violently assaulted, attacked, and robbed.  Indeed, there is no indication that these particular statements to Plaintiffs intended for Plaintiffs to take any action whatsoever.

As for the fourth element, there are no allegations that Plaintiffs acted in justifiable reliance on this statement or sustained any damages.  First, when analyzing justifiable reliance, "it is unreasonable to rely on representations made by the allegedly dishonest parties."  *Mergens,* 166 F.3d at 1117–18 (alteration adopted, quotation marks omitted). Here, Plaintiffs cannot claim that they justifiably relied on these statements because they knew the statements were false as soon as Defendant made them.  They vehemently dispute that they ever attacked Defendant.  That is the heart of their case.  In addition, there are no allegations that these November 11, 2023 statements induced Plaintiffs to take any action whatsoever.  Having failed to allege facts to support the third and fourth element of fraudulent inducement, the Court finds that Plaintiffs failed to state a claim for relief in Count IV.

To the extent that Plaintiffs intend to rely on their allegations in paragraph 59, alleging that Defendant sent emails to Plaintiffs' parents in which he "stat[ed] that it was not good for them to leave matters as it is right now, implying that with a payment he would cease his unlawful conduct," *see* ECF No [1] at 10, this cannot serve as a basis for the fraudulent inducement claim for several reasons.  First, as discussed above, Plaintiffs cannot raise a fraudulent inducement claim for a statement made to third parties, namely their parents.  Even if they could, there is no allegation that these email communications to Plaintiffs' parents contained a false statement concerning a material fact that Defendant knew to be false.  According to the Complaint, Defendant simply said "it was not good for them to leave matters as it is right now."  *See* ECF No [1] at 10.  But there are no allegations that this one statement was false.  Third, there are no allegations that Plaintiffs'

parents paid Defendant to cease his unlawful conduct or took any action at all, so there are no allegations that these email statements induced Plaintiffs' parents. Nor are there any allegations that anyone sustained any damages as a result of these statements via email.

For all these reasons, Count IV fails to state a claim for relief for fraudulent inducement. *See Iqbal*, 556 U.S. at 678; *Surtain*, 789 F.3d at 1245; *Chudasama*, 123 F.3d at 1370 n.41. Because Plaintiffs have not adequately alleged a claim for fraudulent inducement, they are not entitled to final default judgment on Count IV either. *See Chanel, Inc.*, 362 F. Supp. 3d at 1259; *Surtain*, 789 F.3d 1245. Therefore, I respectfully **RECOMMEND** that Plaintiff's request for a final default judgment as to Count IV **BE DENIED**. *See* Fed. R. Civ. P. 55 (b)(2); *Surtain*, 789 F.3d at 1244.

### E.  Entitlement to Attorney's Fees and Costs

In the Motion, Plaintiffs seek to recover their attorney's fees and costs, asking the Court to award them $25,000 each for "attorney's fees for future engagement of counsel" and $54,837.49 each for their past attorney's fees and costs, for a total of $50,000 in future attorney's fees and $109,674.97 in past attorney's fees and costs. *See* ECF No. [20] at 10. While Plaintiffs attempt to justify the reasonableness and amount of their attorney's fees and costs, Plaintiffs do not address the threshold issue here, which is their *entitlement* to fees and costs.

"In the United States, parties are ordinarily required to bear their own attorney's fees — the prevailing party is not entitled to collect from the loser." *Buckhannon*, 532 U.S. at 602; *see also Johnson*, 200 So. 3d at 1214 ("Generally, the custom in American law is that each party is responsible for his or her own attorney's fees, regardless of the outcome of the action."). "Under this American Rule," courts "follow a general practice of not awarding fees to a prevailing party absent explicit statutory authority." *Buckhannon*, 532 U.S. at 602 (quotation marks omitted). Importantly, the "fee applicant bears the burden of establishing entitlement and documenting the

appropriate hours and hourly rates" irrespective of the law authorizing entitlement to attorneys' fees. *See Norman*, 836 F.2d at 1303.

Plaintiffs' Motion does not identify any basis for the award of attorney's fees to them, *see generally* ECF No. [20], and the Court is not aware of any such basis either. Looking at the claims pled in the Complaint, Plaintiff has alleged common law claims for defamation, intentional infliction of emotional distress, fraudulent inducement, and a claim under the Declaratory Judgment Act. To the Court's knowledge, even if Plaintiff were the prevailing on all four claims, none of these causes of action authorize an award of attorney's fees — whether past or future[4] — to the prevailing party. Absent some statutory basis to award attorney's fees, which Plaintiffs fail to identify, the Court has no authority to grant an award of attorney's fees. Regarding Plaintiffs' request for costs, if this Report and Recommendation is adopted and a Final Default Judgment is entered in Plaintiffs' favor, Plaintiffs will then have an opportunity to present their Bill of Costs, seeking to tax those recoverable costs under 28 U.S.C. § 1920. For the foregoing reasons, I respectfully **RECOMMEND** that Plaintiffs' request for attorney's fees — past and future — be **DENIED** and that Plaintiffs' request for costs be **DEFERRED** until a final judgment is entered in the case and the prevailing party submits a Bill of Costs.

### F. Damages

"Once a plaintiff has established a sufficient basis for liability, the Court must conduct an inquiry to determine the appropriate damages." *Gov't Emps. Ins. Co. v. Compass Med. Centers Inc.*, No. 21-CV-23623, 2022 WL 17653816, at *2 (S.D. Fla. Nov. 10, 2022), *report and recommendation adopted*, No. 21-CV-23623, 2022 WL 17602650 (S.D. Fla. Dec. 13, 2022). Even in the default judgment context, the district court "has an obligation to assure that there is a

---

[4] The Court is likewise unaware of any authority for awarding future attorney's fees — statutory or otherwise — to a prevailing party and Plaintiffs cite to none.

legitimate basis for any damage award it enters." *Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003). "Although a defaulted defendant admits well-pleaded allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (citing 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2688 at 58–59 (3d ed. 1998)).

Florida law requires "proof of 'actual damage' [a]s an essential element of a defamation action." *Anheuser Busch*, 317 F.3d 1264, 1266–67 (11th Cir. 2003) (quoting *Miami Herald Publ'g Co. v. Ane,* 423 So.2d 376, 388 (Fla. 3d DCA 1982)). "Federal law similarly requires a judicial determination of damages absent a factual basis in the record" as "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Id.* (citing *Adolph Coors Co. v. Movement Against Racism and the Klan,* 777 F.2d 1538, 1543–44 (11th Cir.1985)). Courts in the Eleventh Circuit cannot enter an award of "cash damages" "'without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation.'" *Adolph Coors,* 777 F.2d at 1543 (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854 (5th Cir.1979)). "To that end, Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that following entry of a default judgment, a district court may conduct an evidentiary hearing 'to determine the amount of damages or to establish the truth of any averment by evidence. . . .'" *Anheuser Busch*, 317 F.3d 1264, 1266–67 (quoting Fed .R. Civ. P. 55(b)(2)).

Here, Plaintiffs each request $25,000 for their reputational harm and emotional distress. *See* ECF No. [20] at 10; ECF No. [22] at 4; ECF No. [23] at 4. Their damages for reputational harm and emotional distress, however, are neither a liquidated sum nor capable of mathematical calculation. The Court has an obligation to verify there is a legitimate basis for the award of

$25,000 to each Plaintiff, but there is no indication in the record to support this award other than Plaintiffs asking for it.  As a result, before any monetary judgment can be entered, an evidentiary hearing will be necessary to determine the appropriate measure of damages.  Plaintiffs must present competent, admissible evidence establishing their right to damages under Count I for defamation. Accordingly, I respectfully **RECOMMEND** that the Court **REQUIRE** Plaintiffs to present such evidence at an evidentiary hearing to give the Court a fully informed determination of damages.

## IV.   CONCLUSION

For the reasons explained above, I respectfully **RECOMMEND** that:

1. Plaintiffs' Motion for Default Judgment against Defendant, **ECF No. [20]**, be **GRANTED as to Count I (Defamation)**;

2. Plaintiffs' Motion for Default Judgment against Defendant, **ECF No. [20]**, be **DENIED as to Count II (Intentional Infliction of Emotional Distress), Count III (Declaratory Judgment), and Count IV (Fraudulent Inducement);**

3. Final Default Judgment **BE ENTERED** in favor of Plaintiffs and against Defendant **as to Count I (Defamation)** under Rule 55(b);

4. Plaintiffs' request for attorney's fees — past and future  — be **DENIED** and Plaintiffs' request for costs be **DEFERRED** until a final judgment is entered in the case and the prevailing party submits a Bill of Costs; and

5. Plaintiffs **BE REQUIRED** to present evidence of their damages for reputational harm and emotional distress at an evidentiary hearing.

Pursuant to Local Magistrate Rule 4(b), the parties will have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with the Honorable K. Michael Moore, United States District Judge.  Failure to

CASE NO. 24-CV-22206-MOORE/Elfenbein

timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers in Miami, Florida on August 6, 2025.

**MARTY FULGUEIRA ELFENBEIN**
**UNITED STATES MAGISTRATE JUDGE**

cc:  All Counsel of Record