UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:24-cv-22206-KMM

COLE SIGNORELLO, *et al.*,

      Plaintiffs,

v.

SERRE FULTON MURPHY,

      Defendant.

_____/

### ORDER

THIS CAUSE came before the Court upon the Report and Recommendation of the Honorable Marty Fulgueira Elfenbein, United States Magistrate Judge ("R&R"). (ECF No. 37). The matter was referred to Magistrate Judge Elfenbein, pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida, to take all necessary and proper action as required by law and/or to issue a Report and Recommendation regarding Plaintiffs Cole Signorello and Porter Neubauer's Motion for Default Judgment (the "Motion") (ECF No. 20). (ECF No. 33). Magistrate Judge Elfenbein issued an R&R recommending that the Motion be GRANTED IN PART. *See generally* R&R. Plaintiffs timely filed objections to the R&R ("Pltffs' Objs."). (ECF No. 42). Defendant filed objections to the R&R (ECF No. 43), although Plaintiffs dispute his ability to have properly done so (ECF Nos. 40, 44). The matter is now ripe for review. As set forth below, the Court ADOPTS IN PART the R&R.

## I.    LEGAL STANDARD

The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

The Court "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). A *de novo* review is therefore required if a party files "a proper, specific objection" to a factual finding contained in the report. *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). "It is critical that the objection be sufficiently specific and not a general objection to the report" to warrant *de novo* review. *Id.*

Yet when a party has failed to object or has not properly objected to the magistrate judge's findings, "the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Keaton v. United States*, No. 14-21230-CIV, 2015 WL 12780912, at *1 (S.D. Fla. May 4, 2015); *see also Lopez v. Berryhill*, No. 17-CV-24263, 2019 WL 2254704, at *2 (S.D. Fla. Feb. 26, 2019) (stating that a district judge "evaluate[s] portions of the R & R not objected to under a clearly erroneous standard of review" (citing *Davis v. Apfel*, 93 F. Supp. 2d 1313, 1317 (M.D. Fla. 2000))).

## II.    FACTUAL BACKGROUND[1]

Underlying this action is an altercation between Plaintiffs and Defendant in Lisbon, Portugal.[2] *See generally* Compl. Defendant accompanied Plaintiffs, who were both college students, on a night out after meeting by chance earlier that day, which according to Plaintiffs was

---

[1] The following facts are taken from the Complaint ("Compl.") (ECF No. 1), and a "party in default has admitted all well-pleaded allegations of fact" therein. *See Garrido v. Linden Contracting Servs.*, No. 0:14-cv-60469-KMM, 2014 WL 12603170, at *1 (S.D. Fla. Aug. 21, 2014); *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009). They are laid out in full in the R&R, and therefore only briefly restated for reference herein.

[2] Defendant's objections to the R&R are limited to his contention that rather than arising out of an altercation, the "allegations of the complaint are more accurately characterized as 'this lawsuit arises out of defamatory statements made by Defendant about Plaintiffs.'" (ECF No. 43) at 1. Plaintiffs contend that Defendant forfeited the right to object due to his default. (ECF Nos. 40, 44). The Court will not reach this question, as Defendant's objection was not a specific objection to a factual finding to warrant *de novo* review and thus need not be considered where the Court did not find clear error in any portion of the R&R. *See Keaton*, 2015 WL 12780912, at *1.

2

initially welcome but became increasingly uncomfortable throughout the evening, culminating in an "almost manic" outburst from Defendant after which he started following Plaintiffs' group and accusing one of Plaintiffs' classmates, Harry, of stealing money. *Id.* ¶¶ 8–21. As Defendant continued to harass and follow Plaintiffs' group, Harry took out his wallet to offer Defendant the allegedly stolen cash to end the confrontation, but Defendant grabbed his wallet, tore up the bills, and yelled: "You think this money means anything to me?!" *Id.* ¶¶ 22–26. After further attempts to retrieve the wallet, at the suggestion of nearby club bouncers the group went to the police, who located Defendant and forced him to return the wallet. *Id.* ¶¶ 27–30. Defendant again started yelling obscenities and otherwise harassing Plaintiffs' group, which led to a physical altercation where Defendant was attacking Harry and Plaintiffs were jumping on Defendant and pulling him to the ground to end his attack, after which they got away. *Id.* ¶¶ 31–36.

Immediately Defendant sought to make himself a victim of the attack, both in the moment and on social media in the following days, prompting the police to investigate Plaintiffs. *Id.* ¶¶ 34, 37–46. Defendant spoke menacingly to Neubauer by mentioning his address in Tennessee, which he had apparently researched since the fight, and after Plaintiffs left Portugal, Defendant and his associates continued to send harassing messages to Plaintiffs' group over email, text, X, as well as sending defamatory and harmful information about Plaintiffs to their school, Washington & Lee University. *Id.* ¶¶ 43, 47–52. Both Washington & Lee University and their study-abroad affiliate school in the United Kingdom required Plaintiffs to explain the altercation and Defendant's accusations. *Id.* ¶¶ 53–56. Aside from the group, Plaintiffs' parents and Signorello's sister have also received harassing text messages with pictures of Defendant's injuries and demands for payments, among other texts characterizing Plaintiffs as having committed a crime, which caused them academic and professional issues and embarrassment. *Id.* ¶¶ 57–69.

Plaintiffs bring one count each for defamation (libel per se), intentional infliction of emotional distress, declaratory judgment, and fraudulent inducement. *Id.* ¶¶ 70–110. Plaintiffs moved for a Clerk's Entry of Default (ECF No. 8), which the Clerk entered thereafter (ECF No. 9), and then moved for default judgment (ECF No. 11). While that motion remained pending, Defendant moved to set aside the Clerk's Entry of Default based on insufficient service of process, which the Court denied. *See generally* (ECF Nos. 13, 18). After the Court denied that motion without prejudice (ECF No. 19), Plaintiffs filed the instant Motion (ECF No. 20). Therein, Plaintiffs seek money damages on their defamation, emotional distress, and fraudulent inducement claims, specifically $25,000 per Plaintiff in damages for reputational harm and emotional distress as well as attorney's fees and costs already and anticipated to be incurred. *See generally* Motion.

## III.   DISCUSSION

Plaintiffs make four objections to Magistrate Judge Elfenbein's R&R. First, Plaintiffs argue the R&R erred in failing to address their request for injunctive relief under Count I. Pltffs' Objs. at 1, 3–6. Second, according to Plaintiffs the R&R ignored allegations and affidavits showing outrageous conduct that would satisfy the Intentional Infliction of Emotional Distress ("IIED") standard. *Id.* at 2, 6–9. Third, Plaintiffs dispute the R&R's application of declaratory judgment law as to Count III in concluding Plaintiffs could not obtain declaratory and injunctive relief together. *Id.* at 2, 9–10. Fourth, Plaintiffs object to the R&R's recommendation that an evidentiary hearing be held on damages. *Id.* at 2, 10–11. As these specific objections were timely filed, the Court reviews the corresponding portions of the R&R *de novo*, and all other parts of the R&R for clear error.

### A.   Injunctive Relief Under Count I

As to their first objection, Plaintiffs argue that the R&R erred in not opining on their request

for an injunction as to Count I. Pltffs' Objs. at 3–6. The Court agrees with Plaintiffs that injunctive relief was not considered under Count I, however this seems to have been the result of a discrepancy between what Plaintiffs sought in the Complaint and what they stated in the Motion, where an injunction was described as a general request and only explicitly tied to Count III. R&R at 23–24; Motion at 7–8, 11; (ECF No. 20-1) at 2 (proposed order stating: "On Count III, Defendant is enjoined from publishing defamatory statement of or concerning Plaintiffs. Plaintiffs have met the standard for the Court to grant an injunction in this case."). Therefore, the Court does not agree that Magistrate Judge Elfenbein's treatment of this issue was erroneous under the circumstances of the Motion. This discrepancy notwithstanding, Plaintiffs now appear to clarify that they were in fact seeking injunctive relief flowing from Count I, consistent with the Complaint, and therefore the Court will address this issue. Pltffs' Objs. at 3–6.

Plaintiffs ask the Court to enjoin Defendant from publishing defamatory statements, "including but not limited to Internet, emails, text, and social media posts, including but not limited to any allegation stating, or implying, that Plaintiffs harmed the Defendant," to enjoin him from contacting Plaintiffs' "employers, universities, friends and family regarding the Plaintiffs" as well as with Plaintiffs and their affiliates, and to order him "to remove any existing social media or other internet posts making statements regarding the Plaintiffs." Motion at 7–8.

"The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). To state entitlement to a permanent injunction, a plaintiff must show "a clear legal right to the relief requested, an inadequate remedy at law, and that irreparable harm will arise absent injunctive relief." *Cnty. of Monroe, Fla. v. Priceline.com, Inc.*, No. 09-10004, 2009 WL 4890664, at *6 (S.D. Fla. Dec. 17, 2009) (cleaned up and citation omitted). It is well-settled Florida law that "absen[t]

5

some other independent ground for invoking equitable jurisdiction, equity will not enjoin either an actual or threatened defamation" as that would constitute an unconstitutional prior restraint. *Weiss v. Weiss*, 5 So.3d 758, 760 (Fla. Ct. App. 5th Dist. 2009). There is disagreement among courts as to whether this rule continues to apply when there has been an actual finding of particular speech being false and defamatory, either by judge or jury, which has sometimes been called the "modern rule." *See Basulto v. Netflix, Inc.*, No. 1:22-cv-21796, 2023 WL 7129970, at *52 (S.D. Fla. Sept. 20, 2023) (collecting cases as to this split). While most cases recognizing the modern rule have been outside of this District, and there are no decisions binding on this Court that have adopted it, at least one court in this District has granted injunctive relief for defamation on the "independent ground" that "an action at law would not be a complete, prompt and efficient remedy." *Lustig v. Stone*, No. 15-cv-20150, 2015 WL 13326350, at *6 (S.D. Fla. Aug. 18, 2015), *report and recommendation adopted* 2015 WL 13326383 (S.D. Fla. Dec. 7, 2015) (quoting *Saadi v. Maroun*, No. 8:07-cv-01976, 2009 WL 3617788, at *1 (M.D. Fla. Nov. 2, 2009)); *see also Friedman v. Schiano*, No. 9:16-cv-81975, at *1 (S.D. Fla. Jan. 17, 2017) (ECF No. 23) (granting without legal discussion permanent injunction requiring defamatory internet posts to be removed and defendant to cease publishing new statements accusing plaintiffs of criminality).

Plaintiffs have satisfied the three prongs of the test for a permanent injunction based on the Court's finding that they adequately stated their claim for defamation, mere damages will not stop Defendant from continuing his ongoing digital harassment campaign against Plaintiffs and their affiliates, and that as Defendant's campaign continues so does the harm to Plaintiffs as they are forced to defend themselves against false accusations to friends, family, schools, and employers. Motion at 7–8; Compl. ¶¶ 49, 60; Signorello Affirmation (ECF No. 22) ¶ 11; Neubauer Affirmation (ECF No. 23) ¶ 13. The remaining question, therefore, is whether such an injunction may be

granted in this defamation context.  The courts in *Lustig* and *Saadi* granted permanent injunctions narrowly tailored to only postings that the defendants had already made online and had already been found to be defamatory.  *Lustig*, 2015 WL 13326350, at *7 ("[Defendant] has shown through her conduct a single-minded intent to destroy [Plaintiff] professionally and personally . . . . In particular, the Undersigned notes that none of [Defendant's] defamatory internet postings about [Plaintiff] have been taken down and they continue to damage his reputation."); *Saadi*, 2009 WL 3617788, at *3 ("[T]he Court finds that [Defendant] should be enjoined from continued or repeated publishing of the statements . . . that were found by the jury to be defamatory.  However, the scope of the injunction must be limited to those statements.").

The Court will similarly constrain itself here.  Accordingly, Plaintiffs will be granted a limited permanent injunction covering only statements regarding Defendant's false and defamatory assertions that Plaintiffs attacked, assaulted, robbed, or otherwise committed criminal acts against or harmed Defendant, which allegations Defendant has admitted by default.  This injunction requires Defendant to both take down the existing internet posts of any kind that reflect these defamatory assertions and cease and desist from making any outreach to Plaintiffs and their affiliates, including any institutions and actual or prospective employers, to convey the same including but not limited to internet, emails, texts, and social media posts.  The injunction will not extend to a broad category of unspecified "derogatory statements" or "any statements about either or both of the Plaintiffs," and instead will be limited to any statements that reflect the information properly presented to the Court and that has been specifically adjudicated as defamatory.  Pltffs' Objs. at 3–4.  The Court adopts the R&R's finding in favor of Plaintiffs as to Count I for defamation upon finding no clear error therein, as modified by the foregoing *de novo* finding regarding Plaintiffs' entitlement to injunctive relief.

**B.  Outrageous Conduct as to IIED**

As to their second objection, Plaintiffs contend that Defendant's conduct should be considered sufficiently outrageous to support a claim for IIED.  Pltffs' Objs. at 6–9.  The R&R found that while Plaintiffs satisfy three prongs of the test for IIED, namely that Defendant intended or recklessly acted to cause the distress which Plaintiffs actually suffered and Defendant's conduct was a but-for cause thereof, they had not shown Defendant's conduct to be sufficiently extreme and outrageous.  R&R at 20–21.  On this point, the R&R found that while Plaintiffs' "allegations reveal offensive, unpleasant, and objectionable conduct, these allegations simply do not rise to the level of outrageous conduct that is so extreme it transcends all bounds of decency and that would be 'regarded as atrocious, and utterly intolerable in a civilized community' as required by Florida law."  *Id.* at 22 (quoting *Leach v. Dist. Bd. of Trs. of Palm Beach*, 244 F. Supp. 3d 1334, 1337 (S.D. Fla. 2017)).  Plaintiffs point to their "station in life" at the time of the harassment, when they were "college seniors on the cusp of graduation, when their reputations, academic standing, and career prospects were most important, as well as vulnerable to suffering lasting harm."  Pltffs' Objs. at 6.  Thus, they argue, Defendant's harassment campaign was particularly detrimental and consisted not of "idle insults," but attacks "carefully directed at the institutions and individuals with the greatest power to derail Plaintiffs' education and careers forever."  *Id.*

Plaintiffs seek to distinguish certain Florida cases on this issue—which held insufficiently outrageous conduct including racist verbal harassment, false accusations of sexual relations in the workplace, and false fraud accusations—because where those cases "concerned isolated incidents of workplace misconduct or defamatory accusations in employment settings," Defendant's "conduct here was worse, comprising a sustained and coordinated public harassment campaign."  *Id.* at 8 (discussing *Williams v. Worldwide Flight Servs. Inc.*, 877 So.2d 869 (Fla. Ct. App. 3d Dist.

2004), *Dowling v. Blue Cross of Fla., Inc.*, 338 So.2d 88 (Fla. Ct. App. 1st Dist. 1976), and *Valdes v. GAB Robins N. Am., Inc.*, 924 So.2d 862 (Fla. Ct. App. 3d Dist. 2006)). Plaintiffs also cite to several cases from Virginia that held false child molestation charges and false domestic abuse reports as sufficiently outrageous conduct. *Id.*

While Defendant undisputedly set out on a targeted and lengthy harassment campaign against Plaintiffs who were many years his junior and indeed in a particularly vulnerable academic and professional state, the Court is not persuaded that this conduct rises to Florida's notably high bar for outrageous conduct. *See Gillis v. Sports Authority, Inc.*, 123 F. Supp. 2d 611, 616 (S.D. Fla. 2000) ("Florida courts have construed the parameters of this cause of action extremely narrowly. Whether a claim for intentional infliction of emotional distress will be held is highly dependent on the allegations in the particular case."). That Defendant's campaign persisted over an extended period and was public in nature does not adequately distinguish this case. *See, e.g.*, *Saadi v. Maroun*, No. 07-cv-1976, 2008 WL 4194824, at *5 (M.D. Fla. Sept. 9, 2008) (dismissing IIED claim for no outrageous conduct where "over the course of two years, Defendants posted statements [on a public blog and other websites] that Plaintiff acted immorally, illegally, and unprofessionally" including false accusations of fraud, mental illness, statutory rape, and connections to the terrorist organization Hezbollah).

Plaintiffs argue that Defendant threatened Neubauer by mentioning his residence in Tennessee and also death threats, but the reference to Tennessee was a one-off non-violent comment from the back of a police car, and Defendant specifically said that while Plaintiffs' actions were "a level of disrespect that can get you killed . . . he would let the students live." Compl. ¶ 27. Although Plaintiffs allege in this same paragraph that this interaction made them "fearful for their lives," *id.*, IIED is assessed under an objective standard so Plaintiffs' "subjective

response does not control the question of whether the tort occurred."  *Socarras v. First Residential Mortg. Servs. Corp.*, No. 07-cv-21240, 2007 WL 9710660, at *2 (S.D. Fla. Aug. 6, 2007).  Even comparing this case of false accusations of attacking or assaulting to the Virginia cases that Plaintiffs argue are "strikingly similar," the Court does not find such similarity on the facts and those cases apply Virginia law.  Pltffs' Objs. at 8;[3] *see also Kent v. Harrison*, 467 So.2d 1114, 1114–15 (Fla. Ct. App. 2d Dist. 1985) (affirming denial of IIED where defendant "initiated and for several months continued a campaign of telephone harassment in the aftermath of a verbal conflict").  Accordingly, the Court finds that Plaintiffs' second objection is without merit under Florida's stringent legal standard for outrageous conduct, and therefore that they have failed to state a claim for IIED.

### C.  Seeking Declaratory and Injunctive Relief Together

As to their third objection, Plaintiffs dispute the R&R's finding that declaratory and injunctive relief cannot be pursued together.  Pltffs' Objs. at 9–10.  In Plaintiffs' words, under Count III they seek "a declaratory judgment against Defendant stating that Defendant's actions be enjoined and that he must 'cease and desist and any content he transmitted . . . be withdrawn and

---

[3] In one of those cases, *Womack v. Eldridge*, the court was merely determining whether "reasonable men may disagree as to whether defendant's conduct was extreme and outrageous and whether plaintiff's emotional distress was severe" in holding that the jury verdict should be reinstated regarding a false child molestation charge.  215 Va. 338, 342–43 (Va. 1974).  In the other case, *Khoraki v. Longoria*, the court specifically noted it was applying "Virgina's definition of outrageous conduct," and the false police reports regarding domestic abuse there resulted in multiple arrests that were spurred by the defendant's intervening escalation of false police reports to have plaintiff re-arrested after he was released on bond.  No. 3:22-cv-70, 2022 WL 1528160, at *4–5 (E.D. Va. May 13, 2022).  In contrast here, Defendant filed a single police report that Plaintiffs explained away and did not result in any arrest or detention, and the main aspect of the harassment campaign that continued was Defendant's messages and contact via email, text, tweet, and social media.  Compl. ¶¶ 23, 27, 37, 40, 48–49, 53–56.  This distances the instant situation from the direct, violent, and repeated threats that have been held outrageous in Florida.  *Nims v. Harrison*, 768 So.2d 1198, 1201 (Fla. Ct. App. 1st Dist. 2000).

corrected.'"  Motion at 2 (quoting Compl. ¶¶ 96–103).  However, the Court does not read the R&R to be contending that injunctive relief and declaratory relief *could* not be pursued together, but rather that taking declaratory relief on its own, Plaintiffs have failed to satisfy the applicable legal standard.  R&R at 24–25.

Based upon a *de novo* review, the Court also concludes that Plaintiffs have not made a showing that declaratory relief is warranted in this case.  The Declaratory Judgment Act authorizes federal courts to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought," where there is an "actual controversy."  28 U.S.C. § 2201(a).  And while declaratory judgment may be entered even where other relief is sought, as a discretionary grant it is generally confined to where such "adjudication would serve a useful purpose."  *Allstate Ins. Co. v. Employers Liab. Assur. Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971); *DDFA of S. Fla., Inc. v. Dunkin' Donuts, Inc.*, No. 00-cv-7455, 2002 WL 1187207, at *5 (S.D. Fla. May 22, 2002) (explaining declaratory judgment should be granted where it will "serve a useful purpose in clarifying and settling the legal relations in issue," or when it "will terminate and afford relief from the uncertainty, insecurity and controversy giving rise to the proceedings" (citation omitted)).  Where a claim for declaratory judgment is duplicative of another claim, which is to say the controversy will be more effectively resolved and the relief fully accorded such that declaratory relief serves no "useful purpose," then a court may in its discretion decline to issue a declaratory judgment.  *Organo Gold Int'l, Inc. v. Aussie Rules Marine Servs., Ltd.*, 416 F. Supp. 3d 1369, 1375 (S.D. Fla. 2019); *see also Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1280 (11th Cir. 2014) ("It is well established that district courts have exceptionally broad discretion in deciding whether to issue a declaratory judgment, and the remedy is not obligatory.").

As evidenced by Plaintiffs' characterizations of Count III referenced above, what Plaintiffs seek here is functionally injunctive relief against Defendant that the Court will already grant under Count I. Motion at 2 (seeking Defendant's actions "be enjoined" and he be ordered to "cease and desist" his harassment). While Plaintiffs argue that both declaratory and injunctive relief is needed (Pltffs' Objs. at 10), they offer no argumentation as to why. The Court cannot discern what relief Plaintiffs seek here that would be a declaration of the legal rights of the parties rather than an order prohibiting Defendant from taking certain actions and therefore does not see a useful purpose in granting declaratory relief when injunctive relief is already granted. Accordingly, the Court finds that Plaintiffs' third objection is without merit and that Plaintiffs have not shown that a declaratory judgment should be issued in this action.

### D. Evidentiary Hearing on Damages

Lastly, Plaintiffs object to the R&R's recommendation that an evidentiary hearing on damages be required. Pltffs' Objs. at 10–11. Plaintiffs are correct that an evidentiary hearing is not required to award damages. *Id.* at 10 (citing *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005)). Damages will only be awarded without a hearing, however, where they can be readily ascertained from record evidence, including affidavits. *See, e.g.*, *Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1263 (S.D. Fla. 2016). Here, Plaintiffs each seek $25,000 for reputational harm and emotional distress, $54,837.49 for attorney's fees incurred to date, $25,000 for attorney's fees "anticipated for their future need to engage counsel to defend against Defendant's defamatory statements in job or university application processes," and future fees and costs to prosecute this action "to be provided." Motion at 9–10. Plaintiffs correctly argue that the general damages do not need to be proven by an exact standard because these damages are inherently hard to quantify, and Plaintiffs' affidavits extensively demonstrate the reputational harm and emotional distress.

12

Pltffs' Objs. at 10–11; *Army Aviation Heritage Found. & Museum, Inc. v. Buis*, 504 F. Supp. 2d 1254, 1260 (N.D. Fla. 2007) ("Any award should be fair and just in the light of the evidence." (citation omitted)).  The Court further notes that $25,000 per Plaintiff would be well within the range of other awards in this District and elsewhere.  *See, e.g.*, *Sirer v. Aksoy*, No. 21-cv-22280, 2023 WL 3166453, at *7 (S.D. Fla. May 1, 2023) (collecting cases).

However, this does not solve the problem of Plaintiffs' claimed attorney's fees.  Plaintiffs argue in their Objections that attorney's fees that do not otherwise have a statutory basis can be awarded as special damages, which seemingly may be a viable argument but is only briefly addressed and does not appear in the Motion.  Motion at 3–4.  Additionally, for the reasons discussed herein, Plaintiffs will not prevail on all of their claims, which is a relevant consideration as to the amount of attorney's fees and costs claimed.  Moreover, even if they were to prevail, Plaintiffs have provided no legal basis for the highly speculative request for prospective attorney's fees, either in the amount of $25,000 or the "to be provided" amount for future anticipated work.  Plaintiffs will also have an opportunity to submit a Bill of Costs upon moving for final judgment.

The Court will not require an evidentiary hearing at this time.  However, because Plaintiffs' theory of entitlement to attorney's fees has apparently evolved and in light of the other claimed amounts lacking legal basis, the Court will deny all monetary relief without prejudice.  Plaintiffs shall move for all damages, fees, and costs in conjunction for moving for entry of final judgment, which will allow them to adjust their claimed amounts if desired considering the Court's views expressed herein on which amounts are properly recoverable and incorporate the legal argumentation they advance in the Objections.

**E.  Clear Error Review of R&R Findings to Which Plaintiffs Did Not Object**

The Court finds no clear error in the R&R's findings to which Plaintiffs did not specifically

object.  As to Count I for defamation, aside from the injunctive relief issue discussed above, the R&R finds that Plaintiffs have adequately stated a claim under the five-part test for defamation under Florida law.  *See* R&R at 17–20 (applying *Johnston v. Borders*, 36 F.4th 1254 (11th Cir. 2022) and its progeny).   As to Count IV for fraudulent inducement, Magistrate Judge Elfenbein found that Plaintiffs failed to adequately state a claim because reviewing only representations made directly to Plaintiffs as required, although Defendant made numerous false statements there is no record evidence that he intended for Plaintiffs to act in reliance thereon or that Plaintiffs in fact did so.  R&R at 25–29 (applying *Glob. Quest, LLC v. Horizon Yachts, Inc.*, 849 F.3d 1022 (11th Cir. 2017) and *Mergens v. Dreyfoos*, 166 F.3d 1114 (11th Cir. 1999)).  Upon a review of the record, the Court finds no clear error with Magistrate Judge Elfenbein's findings as to these points.

## IV.     CONCLUSION

UPON CONSIDERATION of the R&R, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby ORDERED AND ADJUDGED that the R&R (ECF No. 37) is ADOPTED IN PART.  Plaintiffs' Motion for Default Judgment (ECF No. 20) is GRANTED IN PART as to liability and injunctive relief under Count I and otherwise DENIED.  Within twenty-one (21) days of this Order, Plaintiffs are DIRECTED to file a motion for final default judgment that conforms to the Court's findings herein, along with a motion addressing the amount and type of all monetary awards as appropriate.

DONE AND ORDERED in Chambers at Miami, Florida, this  17th   day of September, 2025.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record